644 So.2d 789 (1994)
Marilyn M. CONNELLY
v.
Michael R. CONNELLY.
No. CA 94 0527.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
*791 Donna W. Lee, Michael S. Walsh, Baton Rouge, for appellant Marilyn M. Connelly.
Michael R. Connelly, in pro. per.
Before CRAIN, FOIL and WHIPPLE, JJ.
WHIPPLE, Judge.
This is an appeal by Marilyn M. Connelly from a judgment modifying a previous joint custody consent judgment and awarding sole custody of Christopher Connelly to his father, Michael R. Connelly. For the following reasons, we affirm but remand to the trial court for implementation of a visitation plan.

FACTS AND PROCEDURAL HISTORY
The parties were married on August 18, 1970, and physically separated in May of 1983. Three children were born of the marriage: Sean, Patrick and Christopher. On November 7, 1983, Marilyn Connelly filed a petition for separation and sought permanent custody of the three children. Michael Connelly reconvened, seeking joint custody of the children. A judgment of divorce was eventually rendered, and by agreement of the parties, Marilyn and Michael Connelly were awarded joint custody of the three children, with Marilyn Connelly designated the domiciliary parent. Michael Connelly was granted *792 liberal access to the children. Shortly thereafter, in March of 1986, Sean Connelly, then approximately twelve years old, voluntarily chose to live with his father (and has resided with his father since that time).
In 1988, Michael Connelly married Kay Abed Connelly, who had three children by a previous marriage. Michael Connelly later adopted one of Kay's children and Kay Connelly adopted Sean Connelly shortly after he reached age eighteen. In December, 1992, Patrick, then approximately seventeen years old, also went to live with Michael and Kay Connelly. Thus, the issues involved in this appeal relate to custody of the youngest child and sole remaining minor, Christopher Connelly.
On July 25, 1993, Marilyn Connelly moved to Lexington, Virginia, taking Christopher with her, without the knowledge or consent of Michael Connelly. Within four days after the move, Michael Connelly was notified of the move by letter. While Michael Connelly was provided with a post office box address, he was not provided with a physical address or phone number where he could reach Christopher.
Shortly thereafter, on August 9, 1993, Michael Connelly filed a rule to change custody, seeking permanent sole custody of Christopher Connelly as well as an immediate order awarding him temporary custody of Christopher. On August 10, 1993, Marilyn Connelly filed a "Rule for Change of Custody and Visitation Plan," seeking specific visitation with Patrick Connelly, who was then residing with his father, and a revision of the previous custody and visitation plan regarding Christopher.
By order dated August 11, 1993, the trial court ordered Marilyn Connelly to return Christopher to the jurisdiction of the court not later than August 17, 1993. A hearing on the merits of the parties' rules was scheduled for December 1, 1993. Marilyn Connelly then applied to this court for supervisory writs of review of the trial court's ruling requiring the return of Christopher to the jurisdiction of the court. On August 17, 1993, this court granted her writ application and stayed the trial court's order, pending a full hearing on the rules to change custody and visitation.
Trial on the rules was held on August 23, 26, and 27, 1993. After hearing the evidence presented, the trial court determined that a change in custody was warranted and by judgment dated September 3, 1993, the trial court awarded Michael Connelly sole permanent custody of Christopher Connelly, with reasonable visitation rights in favor of Marilyn Connelly. In accordance with the stipulation of the parties, the trial court also named Michael Connelly as domiciliary parent of Patrick Connelly, with reasonable visitation rights accorded to Marilyn Connelly. Thereafter, Marilyn Connelly filed a motion for new trial, which was denied by the trial court.
Marilyn Connelly appeals, assigning the following as error:
1. The trial court erred in failing to apply the "change in circumstances" rule which specifically governs modification of consent decrees;
2. The trial court erred in changing an existing consent joint custody decree to sole custody based on Marilyn Connelly's relocation to another state without requiring Michael Connelly to demonstrate that the relocation materially and detrimentally affected the child;
3. The trial court committed manifest error in his application of the factors enumerated in LSA-C.C. art. 131, because the evidence did not support his findings of fact, as follows:
a. The trial court failed to give proper weight and credibility to the testimony of a fourteen year old boy's preference to continue living with his mother.
b. The trial court erred in concluding that a drop in the child's grades was attributed to a relocation to Virginia without any evidence to support that conclusion.
c. The trial court erred in giving greater weight to the permanence of a family unit than to the stability of the child's environment.
d. The trial court was incorrect in concluding that Marilyn Connelly's financial *793 position decreased after her relocation to Virginia.
4. The trial court erred by changing an existing consent custody decree to sole custody without awarding specific visitation rights of Christopher to Marilyn Connelly;
5. The trial court erred in denying Marilyn Connelly's motion for directed verdict; and
6. The trial court erred in denying Marilyn Connelly's motion for a new trial.

MODIFICATION OF CUSTODY

(Assignments of Error Nos. 1, 2 & 3)
When a trial court has made a considered decree of permanent custody, the party seeking a change in custody bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986). However, where no considered decree of custody has been rendered, the "heavy burden" rule does not apply. A party seeking to modify an existing custody arrangement must still prove that a change in circumstances materially affecting the welfare of the child has occurred since the original decree and that the modification proposed is in the best interest of the child. Smith v. Smith, 615 So.2d 926, 931 (La.App. 1st Cir.), writ denied, 617 So.2d 916 (La. 1993).
Every child custody case must be viewed within its own peculiar set of facts. Cooper v. Cooper, 579 So.2d 1159, 1162 (La.App. 2nd Cir.1991). A trial court's award of custody is entitled to great weight and will not be overturned on appeal unless an abuse of discretion is clearly shown. Rogers v. Rogers, 577 So.2d 761, 763 (La.App. 1st Cir.1991).
In the instant case, the joint custody decree was entered initially by consent of the parties. Accordingly, to prevail on his rule to change custody, Michael Connelly was required to prove that a change of circumstances had occurred which materially affected Christopher's welfare and that the modification proposed was in Christopher's best interest.
In her first assignment of error, Marilyn Connelly contends that the trial court erroneously rejected the change of circumstances rule and only considered the best interest of the child. In her second assignment of error, she contends that Michael Connelly did not prove that the relocation materially and detrimentally affected Christopher. We find no merit in either argument.
Although not stated in these specific terms, it is clear from the record and the trial court's reasons for judgment that the trial court properly applied the change of circumstances rule in this case and correctly determined that the relocation of Marilyn and Christopher Connelly to Virginia constituted a change in circumstances which materially affected the welfare of the child.
The record shows that while Christopher's primary residence had been with his mother, he enjoyed regular and liberal visitation with his father and stepmother, two biological brothers, one adopted sister and two step siblings.[1] Clearly, Christopher's move to Virginia caused a separation in his established family unit. Not only did the move have the effect of interfering with Michael Connelly's exercise of visitation with Christopher, the move also had the effect of greatly limiting Christopher's contact with his siblings.
Moreover, the record shows that Christopher, who was fourteen years old at the time of the hearing, had spent his entire lifetime in Baton Rouge, Louisiana. The trial court noted that Christopher participated in many activities with his father, stepmother and siblings, including vacation, sports and scout *794 activities. Christopher and his father and brothers were all very involved in Boy Scouts, with Michael Connelly participating as Scout Master of Christopher's scout troop. Through his community ties, Christopher had established many friendships in the Baton Rouge area. His mother's decision to relocate to Virginia cut off these contacts. In contrast, in Virginia, Christopher had one friend and no relatives other than his mother.
The record also reveals that because of the time chosen by Marilyn Connelly to accomplish the move to Virginia, Christopher was required to forego attending the National Boy Scout Jamboree, an important event in scouting which Christopher had been scheduled to attend and for which Christopher had worked in excess of one year to earn money to help pay for attendance at this event. Marilyn Connelly admitted that the National Jamboree site was a couple of hours driving distance from her location in Lexington, Virginia and that she could have taken Christopher to the Jamboree. However, Marilyn Connelly testified that "other things had to be done" and that Christopher had to get settled in Virginia.
More importantly, as noted by the trial court, Christopher knew for more than a year that his mother was planning to move to Virginia, and withheld this information from his father pending the move. Although Marilyn Connelly testified that Christopher made the decision not to tell his father about the move, when questioned by the trial court about his reasons for withholding this information from his father, Christopher responded as follows: "Because we were afraid he was going to makeyou know, we would have to go to court and stuff again...." (Emphasis added.) While it is not clear who made the decision to keep the impending move secret, it is clear that some discussion took place between Christopher and his mother regarding the withholding of information about the move from his father. As the trial court obviously recognized, the mother's actions placed a heavy burden on a fourteen year old child to withhold this important information from his father, and diminished the open and honest relationship that had previously existed between Christopher and his father.
In arguing that Michael Connelly failed to prove a change in circumstances that materially affected Christopher's welfare, Marilyn Connelly relies heavily on this court's opinion in Smith, 615 So.2d 926. However, we find the facts in Smith clearly distinguishable from the present case. In Smith, the mother moved with both of her children, ages seven and eight, and her new husband to Indiana to live with the children's maternal grandparents. In contrast to the instant case, in Smith, the siblings were not separated and their family unit, with the exception of their father, remained intact after the move. Moreover, the children were moved to a location where many relatives of the family lived. Also, in Smith, the children were substantially younger than the child involved in the present case, making the transition easier for them.
In Smith, we noted that the underlying reason for the trial court's judgment was that the mother had moved to Indiana under the subterfuge that she was going there for a family holiday visit, without telling the father or the children her true intentions. Smith, 615 So.2d at 932-933. We concluded that the trial court gave undue weight to this factor, (i.e. the mother's dishonesty and the resulting interference with the father's ability to exercise visitation) in deciding to modify the custody arrangement. Smith, 615 So.2d at 934. In the instant case, however, the trial court's very lengthy reasons for judgment document that its true concern in deciding to change the prior custody award was Christopher's welfare.
Based on our review of the record herein, we conclude that the trial court properly applied the change in circumstances rule in determining that a change in circumstances had occurred and that the change materially affected Christopher. Therefore, Marilyn Connelly's first and second assignments of error lack merit.
We also find no error in the trial court's determination that the modification proposed by Michael Connelly was in Christopher's best interest. Thus, we find no merit in Marilyn Connelly's third assignment *795 of error. The best interest of the child is the paramount consideration in child custody matters, including those involving change of custody. Matthews v. Matthews, 633 So.2d 342, 345 (La.App. 1st Cir.1993). A proper showing that a different arrangement is in the child's best interest includes consideration of the eleven specific, enumerated factors in LSA-C.C. art. 131(C)(2), plus any other factor which the trial court deems to be relevant. Matthews, 633 So.2d at 346.[2]
While ordinarily joint custody is presumed to be in the best interest of the child, this presumption ceases to exist when either parent changes his or her domicile to another state. LSA-C.C. art. 131(K) (prior to amendment by Acts 1993, No. 261, § 1, effective January 1, 1994.)
In her third assignment of error, Marilyn Connelly contends that the trial court's findings with regard to the enumerated factors of LSA-C.C. art. 131(C)(2) were manifestly erroneous, specifically regarding four findings by the trial court.
She first contends that the trial court committed manifest error in failing to give proper weight and credibility to Christopher's testimony that his preference was to continue living with his mother. A child's preference, although not dispositive, is an appropriate factor to consider in determining the best interest of the child. Former LSA-C.C. art. 131(C)(2)(i); Sheppard v. Hood, 605 So.2d 708, 712 (La.App. 2nd Cir.1992). In considering whether Christopher had clearly stated a preference in moving to Virginia with his mother, the trial court stated as follows:
Now, in evaluating the credibility of the witnesses to determine what is in the best interest of the child, the court will have to consider the demeanor of the witnesses to determine who is telling the truth and who is stretching it. The court, also, elicited the testimony of Chris and the court notes that Chris' testimonythe child appeared to be a child that is confused and was very careful of what his testimony was to this court, but he did state that he wanted to go to Virginia to be with his best friend, and he didn't go to the Jamboree because he had to move to be with his best friend and it was more important for him to move with his mother than to go to the Jamboree....
The child testified, when ask[ed], who do you want to live with, he said his mother, but the court notes that his demeanor was a strained testimony about living with his mother....
* * * * * *
He appeared to be a child who was very careful about his testimony and reluctant to state matter of factly in his testimony to this court, and the court found that his motives may have been other than what he was telling this court based on his demeanor and his testimony.
* * * * * *

*796 When the child testified about his move, he didn't appear to be a happy child, he didn't appear to be happy about that move. Chris Connelly's testimony appeared to be accountable.
* * * * * *
The court finds that the child is of a sufficient age to express a preference but the court is not convinced that the preference stated to the court is the real preference of the child. There are too many other factors for the court to consider or reject one hundred percent opinion of the fourteen year old.
The manifest errorclearly wrong standard demands great deference to the trier of fact's findings when those findings are based on determinations regarding credibility of witnesses, for only the trier of fact can be aware of variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Lirette v. State Farm Insurance Company, 563 So.2d 850, 852 (La.1990). Based on the record before us, we can not conclude that the trial court erred in its determination that Christopher's testimony concerning his desire to remain with his mother was guarded and less than credible.
Marilyn Connelly next argues that the trial court was manifestly erroneous in concluding that a drop in Christopher's grades was attributed to a relocation to Virginia. In considering Christopher's home, school and community record, the trial court stated as follows:
There has been no testimony as to the reasons why the child's grades went down in the eighth grade, but generally you will find that a child's grades will change as a result of some change in the child's life, either emotionally or some other reason there is a change that occurs in a child which will mainifest [sic] itself in some type of abnormal behavior, or, in this case, a manifestation where the child's grades changed from excellent grades two years previously to grades that were not so hot in the eighth grade last year. The child was planning to go to the ninth grade at Baton Rouge High School which is the premier high school in Baton Rouge and there is a minimum entrace [sic] requirement, yet Mrs. ConnellyMarilyn Connelly decided to retain the child in the eighth grade to repeat that grade, despite his ability to do ninth grade work.
* * * * * *
So whether his grades in the eighth grade deteriorated as a result of his emotional worry and anxiety of the move or not, whether it was anxiety for not telling his father, or anxiety leaving, or the excitement of going to a new location[,] [t]here i[s] no way of knowing that but something happened to that child as a result of that move and his grades suffered.
Christopher was not asked directly why his grades had declined in the eighth grade. However, the trial court inferred from the testimony presented that the circumstances leading up to and surrounding the move contributed to Christopher's academic decline. Regardless of whether the evidence proved that the move was the direct and sole cause of Christopher's drop in grades, the trial court obviously believed that Christopher's drop in grades, as well as the fact that he would be repeating eighth grade in Virginia, were important factors to consider.
We note that Christopher was taken out of his established academic environment at a time when his academic progress had slowed. Prior to the move and despite his drop in grades, Christopher was scheduled to enter Baton Rouge High School, which Christopher conceded was one of the top one hundred high schools in the nation. Nonetheless, for reasons which were not adequately explained at trial, Marilyn Connelly made the decision to have Christopher repeat the eighth grade in Virginia. When asked why he was going to repeat eighth grade, Christopher responded that he would then be in the same grade with his friend in Virginia. Considering the above, we find no error in the trial court's consideration of this evidence, or in its determination that the proposed move and educational arrangements were contrary to Christopher's best interest.
Marilyn Connelly further contends that the trial court committed manifest error *797 in giving greater weight to the permanence of a family unit than to the stability of the child's environment. Both the length of time the child has lived in a stable, satisfactory environment and the permanence, as a family unit, of the existing or proposed custodial home or homes are important factors to be considered in determining the best interest of a child. LSA-C.C. art. 131(C)(2)(d) and (e). According to Marilyn Connelly, the trial court should have given greater weight to the fact that Christopher had been living in a stable environment with his mother for fourteen years.
The trial court acknowledged that Christopher had been living in a stable environment in Baton Rouge with his mother as domiciliary custodian for fourteen years. However, the court noted that Christopher was also part of Michael Connelly's family unit which was very close, with a stepmother, father and siblings who participate in activities together as a family unit.
It is clear from the record that whether Christopher relocated to Virginia with his mother or remained in Baton Rouge with his father, the stability and continuity of his environment would be disrupted. As stated above, Christopher's environment, as it existed prior to the move to Virginia, consisted of residing in Baton Rouge primarily with his mother with frequent visits and participation in activities with his father, stepmother and siblings. As the trial court concluded, Christopher would be "moved to Virginia from a stable community where all of his friends are located, school, scouting and other siblings to an area where he has one friend and no relatives and to a new environment to start over."
Finally, Marilyn Connelly contends that the trial court committed manifest error in concluding that her financial position declined after her relocation to Virginia. In addition to the factors enumerated in LSA-C.C. art. 131(C)(2)(a) through (k), the trial court also considered the reasons for Marilyn Connelly's move. With regard to Marilyn Connelly's explanation for the move, the trial court stated that "[h]er testimony is [she moved to Virginia] because of her health and the air is better and that she wanted to move to a more economically and better climate for herself and her child, but the court notes that her move for health reasons probably helped her but as to the economic reasons she went down instead of up."
In brief, Marilyn Connelly contends that the trial court erred in this conclusion because she held two jobs in Virginia, one earning $1,600.00 per month and the other earning $350.00 per month, compared to the approximate $2,000.00 per month she was earning in Louisiana. She contends that the trial court failed to recognize that her living expenses decreased upon the move to Virginia and that she actually had more disposable income after the move to Virginia. On cross-examination, Marilyn Connelly admitted that she accepted a reduction in salary in order to move to Virginia. Moreover, Marilyn Connelly's reduction in living expenses, even considering the elimination of the second mortgage on the Baton Rouge home, was less than the reduction in salary for the teaching position she had previously held in Baton Rouge in comparison to the teaching position she accepted in Virginia. Therefore, we find no error in the trial court's conclusion that Marilyn Connelly's financial position declined after her relocation to Virginia or in its rejection of the alleged economic justification for the move offered by Marilyn Connelly.
The record and the trial court's reasons herein show that the trial court gave ample consideration to each of the factors enumerated in LSA-C.C. art. 131(C)(2). Considering the evidence in the record as a whole, we can not conclude that the trial court gave undue weight to any one of these factors in reaching its conclusions. We find no abuse of the trial court's discretion in its determination that a change in custody was warranted under the facts presented herein. We also find no error in the trial court's award of sole custody to Michael Connelly.
These assignments of error lack merit.

SPECIFIC VISITATION PLAN

(Assignment of Error No. 4)
In this assignment of error, Marilyn Connelly contends that the trial court erred in *798 failing to provide a specific visitation plan for her visitation with Patrick and Christopher. Michael Connelly contends that this issue is moot because a visitation plan has been devised and accepted by both parties in this matter and that a consent judgment has been submitted to the trial court, allowing specific visitation of Marilyn Connelly with Christopher Connelly.[3]
We agree with Marilyn Connelly that if a specific plan for visitation has not already been implemented, the trial court should establish a visitation plan, especially given the parties' demonstrated inability to communicate with one another. For these reasons, we remand this matter to the trial court for implementation of a visitation plan if one has not in fact already been established.

INVOLUNTARY DISMISSAL[4]

(Assignment of Error No. 5)
In this assignment of error, Marilyn Connelly contends that the trial court erred in failing to grant a verdict in her favor at the close of Michael Connelly's presentation of evidence. Louisiana Code of Civil Procedure article 1672(B) provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Unlike a motion for directed verdict in a jury trial, LSA-C.C.P. art. 1672(B) requires a judge to evaluate all the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion. Barnes v. Thames, 578 So.2d 1155, 1164 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La.1991). Proof by a preponderance of the evidence simply means that taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Barnes, 578 So.2d at 1164.
We are convinced from our review of the record that Michael Connelly carried his burden of proof. Moreover, in denying Marilyn Connelly's motion, the trial court explained that it had consolidated the hearing of both rules and at the outset of the trial, the court stated that it was going to hear all of the testimony and then rule at the conclusion of the hearing. Considering the entire record as well as the trial court's reasons for denying the motion, we find no error by the trial court.
This assignment of error also lacks merit.

MOTION FOR NEW TRIAL

(Assignment of Error No. 6)
In her last assignment of error, Marilyn Connelly contends that the trial court erred in denying her motion for new trial where its judgment was contrary to the law and evidence. A motion for new trial should be granted when the judgment is clearly contrary to the law and evidence and, in any case, if there is good ground therefor. LSA-C.C.P. arts. 1972 and 1973. Louisiana jurisprudence is clear that a new trial should be ordered when the trial court, exercising its discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. Bush v. Cannata's Supermarket, Inc., 612 So.2d 794, 797 (La. App. 1st Cir.1992).
*799 After a thorough review of the record herein, and for the reasons stated in our treatment of the appellant's first three assignments of error above, we cannot say that the evidence points so overwhelmingly in Marilyn Connelly's favor as to render the trial court's judgment clearly contrary to the law and evidence or that there are good grounds for a new trial. Accordingly, we find no error in the trial court's refusal to grant a new trial.
This assignment of error also lacks merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court awarding sole custody of the minor, Christopher Connelly, to Michael Connelly, with reasonable visitation rights in favor of Marilyn Connelly, is affirmed. We remand this matter to the trial court for implementation of a plan for visitation by Marilyn Connelly with Christopher Connelly, in the event that a plan has not already been established and for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against Marilyn Connelly.
AFFIRMED AND REMANDED.
NOTES
[1] At one point, Christopher's biological brothers resided with Christopher and his mother. However, at the time of the move to Virginia, both of his brothers were residing with his father, resulting in a separation of Christopher from his brothers.
[2] Prior to amendment of the article effective January 1, 1994, LSA-C.C. art. 131(C)(2) provided as follows:

The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
[3] The record shows that Patrick Connelly was born on November 17, 1975. Thus, Patrick reached the age of majority on November 17, 1993. Accordingly, Marilyn Connelly's complaint that the trial court erred in failing to grant her specific visitation with Patrick is moot.
[4] Although Marilyn Connelly moved for a directed verdict at the close of Michael Connelly's case-in-chief, the motion should have properly been referred to as a motion for involuntary dismissal, which governs dismissal of the plaintiff's claim in an action tried by the court without a jury. See LSA-C.C.P. arts. 1672(B) and 1810.