| .GUIDRY, J.
This is a suit by appellee, Janet Smith Perkins, to modify a joint custody decree. Appellant, Gary W. Perkins, appeals the trial court’s judgment modifying custody in favor of appellee and against appellant, designating appellee as the sole domiciliary parent and granting appellant visitation rights. We reverse and reinstate the August 7,1995 stipulated judgment.
FACTS AND PROCEDURAL HISTORY
Appellant and appellee were married on May 25, 1985. Two children were born of this union, namely, Abbey Ray, born October 23, 1988, and Ashton Elizabeth, born June 27, 1991. Appellant and appellee separated on January 2, 1995, and on February 15, 1995, appellee filed a petition for divorce pursuant to La. C.C. art. 102.
In the interim, the parties reached an agreement as to the custody arrangement, and on May 8, 1995, a stipulation as to custody was entered in open court. A judgment in accordance with the stipulation was signed on May 24, 1995. Under the terms of the agreement, beginning on June 9, 1995, appellant and appellee were designated as co-domiciliary parents, with the children alternating one week with each parent, commencing each week on Friday at 6:00 p.m. and ending the following Friday at 6:00 p.m. Among other things, the judgment also “ordered, adjudged, and decreed” that each party retained the right to seek a re-determination of custody without the necessity of showing a change in circumstances.
On July 31, 1995, appellee filed a supplemental petition for divorce pursuant to La. C.C. art. 103, and by stipulated judgment, a divorce was granted on August 7, 1995. Additionally, the parties were “designated as co-domiciliary parents, sharing custody of the children on a 50-50 basis, with |3the children residing with [appellee] one week and residing with [appellant] every other week.”
On January 28, 1997, appellee filed a pleading entitled “Motion to Terminate and/or Restrict Visitation Privileges.” In this motion, appellee asserted that the joint custody arrangement should be terminated because appellant had used unnecessary force and abuse to discipline the children and that he could not control his temper. Appellee expressed concern for the safety of the children and prayed for sole custody, subject to reasonable supervised visitation on behalf of appellant. Ap-pellee also sought sole custody of the children and the suspension of the August 7, 1995 stipulated judgment, pending a hearing on the motion. On February 5, 1997, the trial court issued an order suspending the August 7, 1995 judgment and setting the matter for hearing on March 24, 1997.
Appellant answered the motion on February 21, 1997, generally denying appel-lee’s allegations, and reconvened requesting that he be awarded sole custody of the children. He also prayed that the court’s February 5, 1997 order be vacated. However, the trial court denied this request. A hearing was held on March 24,1997, and judgment was rendered on that day in open court, and signed on April 14, 1997. Pursuant to this judgment, the trial court, among other things, vacated the February 5, 1997 order, required the parties to contact Dr. Stephen Thompson for psychological evaluations of themselves and their mi *787 nor children, and prohibited the parties from implementing corporal punishment against their minor children.
A trial on the motion to terminate and/or restrict visitation privileges was held on June 23, 1998. On October 21, 1998, judgment was rendered in open court, and judgment was signed on November 19, 1998. Under the | ¿terms of the judgment, appellee was designated as the sole domiciliary parent of Abbey and Ash-ton, and appellant was granted visitation privileges as follows:
from Friday at the close of school until Monday morning at the beginning of school every other weekend during the school term, during which period [appellant] shall be sensitive to and participate in any and all activities of the children, including, but not limited to, attending any school, sports, extracurricular or any other activities in which the children are involved such as friend’s (sic) birthday parties and especially during his weekend visitations. Further, [appellant] shall spend one day per week from the close of school until 8:00 p.m. with the children during the school term, during which time he shall be responsible for providing after school snacks, as well as supper. In addition, [appellant] shall help the children complete all homework assignments and prepare, purchase or otherwise provide any items needed for school the following day. Additionally, [appellant] shall share visitation rights during the holidays in compliance with the court’s visitation schedule for rotating by halves beginning with the next calendar holiday. During the summer vacation from the close of the school term to the beginning of the next term, Abbey and Ashton Perkins shall return to a rotating schedule of one week with each parent with the children to return to [appellee’s] home no later than one week prior to the beginning of the school term.
Furthermore, the judgment prohibited the parents from using corporal punishment, required proper adult supervision at all times, required proper placing of the children in seat belts when riding in a vehicle, prohibited the consumption of alcoholic beverages by the parents during visitation with the children, and prohibited either parent from having overnight guests of a romantic nature while visiting with the children.
ASSIGNMENTS OF ERROR
Appellant now appeals and assigns the following as error:
1. The trial court was manifestly erroneous in modifying custody where Janet Smith Perkins failed to meet her burden of proof, specifically, failing to show that there had been a material change of circumstances and that the modification was in the best interest of the minor children.
2. The trial court was manifestly erroneous in imposing restrictions on the parents regarding the consumption of [¡¡alcohol, prohibiting either parent from having overnight guests of a romantic nature, and ordering Gary Perkins to participate in all activities of the children absent any evidence in the record to support same.
DISCUSSION
In a proceeding to change custody, as in cases of an original grant of custody, the best interest of the children is paramount. Percle v. Noll, 93-1272, p. 6 (La.App. 1st Cir.3/11/94), 634 So.2d 498, 501. Every child custody case must be viewed within its own peculiar set of facts. Connelly v. Connelly, 94-0527, p. 4 (La. App. 1st Cir.10/7/94), 644 So.2d 789, 793. The trial court is vested with vast discretion in matters of child custody and visitation, and its determination is entitled to great weight and will not be disturbed on appeal unless a clear showing of abuse of its discretion is made. Remson v. Remson, 95-1951, p. 4 (La.App. 1st Cir.4/4/96), 672 So.2d 409, 411.
*788 This court has articulated the burden of proof required to change custody as follows:
When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986); Smith v. Smith, 615 So.2d 926, 930-931 (La.App. 1st Cir .), writ denied, 617 So.2d 916 (La.1993). However, where no considered decree of custody has been rendered, the “heavy burden” rule does not apply; a party seeking to modify an existing custody arrangement must still prove that a change in circumstances materially affecting the welfare of the child has occurred since the original decree and that the modification proposed is in the best interest of the child. Smith v. Smith, 615 So.2d at 931.
Matthews v. Matthews, 633 So.2d 342, 345-346 (La.App. 1st Cir.1993).
Where the original custody decree was entered by stipulation of the parties, it is not a considered decree. Darnall v. Darnall, 95-169, p. 5 (La.App. 3rd Cir.5/31/95), 657 So.2d 387, 390. In the instant case, the joint custody decree was entered initially by agreement or stipulation of the parties. Therefore, to prevail on her rule to modify custody, appellee was required to prove that a change of circumstances had occurred which materially affected Abbey’s and Ashton’s welfare and that the modification proposed was in their best interest. See Day v. Day, 97-1994, p. 3 (La.App. 1st Cir.4/8/98), 711 So.2d 793, 795; Connelly v. Connelly, 94-0527 at 5, 644 So.2d at 793.[1]
La. C.C. art. 134 provides a non-exclusive list of factors which the trial court may consider with all other relevant factors for the determination of the best interests of the child.[2] The consideration of *789 all relevant factors |7under Article 134 should be followed in actions to change custody, as well as in those to fix custody initially. La. C.C. art. 134, comment (d); Shaw v. Shaw, 30,613, p. 4 (La.App. 2nd Cir.6/24/98), 714 So.2d 906, 909, writs denied, 98-2414, 98-2426 (La.11/20/98), 729 So.2d 556, 558.
Custody should not be changed when to do so would punish a parent for past behavior when there is no proof of a detrimental effect on the children. An award of custody is not a tool to regulate human behavior. Smith v. Smith, 615 So.2d 926, 934 (La.App. 1st Cir.), writ denied, 617 So.2d 916 (La.1993).
On appeal, appellant argues that appellee failed to meet her burden of proving a material change in circumstances warranting a modification of custody. We agree.
In her motion to terminate and/or restrict visitation privileges, appellee made allegations that appellant used unnecessary force and abuse when disciplining the girls. Additionally, in her supplemental motion, appellee alleged a complete breakdown in communication between appellee and appellant in making decisions concerning the children. She also alleged |sthat recent changes in appellant’s home life, with his new wife and her three children, whose ages and background differ from those of Abbey and Ashton, create an environment which is not in the best interest of the girls.
The trial court, in its “Reasons and Order,” did not specify which, if any, of the Article 134 factors were considered by the court. Furthermore, nothing in the “Reasons and Order” explains the basis for the court’s decision to modify custody. However, after a thorough review of the record and the relevant factors for consideration, we conclude that appellee did not meet her burden of proof.
The only Article 134 factors that appear to create any questionable issues are factors 6, 8, 9, and 10. And although appellee presented a great deal of speculative testimonial evidence regarding these factors, none of the testimony presented revealed that any of the allegations were true, and, even assuming that they are true, appellee showed no detriment to the children.
The evidence demonstrates that since the August 7, 1995 judgment was rendered, appellant has remarried and lives in the former community home with his new wife and family. His new wife, Lori, has two teenage children, Sarah and Justin Barnett, of a prior marriage, and a preschool age daughter, Haley, from a prior relationship with Eugene Loyacano, one of appellee’s witnesses at trial. Additionally, appellant has a teenage son, Adley, of his first marriage. Adley visits his father on alternating weekends.
According to appellee, the former community home is not large enough to accommodate six children and two adults, which, according to her, is often the situation at the home. However, appellant testified that the once three-bedroom house has been converted to a five-bedroom house, and adequately accommodates everyone whenever all the children are staying at the home.
Appellee also alleges a total breakdown in communication between appellee and appellant with respect to decisions concerning the children. However, the testimony of both appellant and appellee indicate that the lines of communication, while somewhat strained, are still open.
Additionally, appellee asserts that Justin and Sarah are bad influences on her young daughters. According to appellee, Justin has had problems with the law in the past, and Sarah is a smoker and is sexually promiscuous. However, appellee failed to *790 present any evidence that would substantiate any of these allegations.
Although the girls have expressed a desire to spend more time with their mother than with their father, such a preference alone does not dictate a change in the custody arrangement. The jurisprudence has held that a child’s stated preference alone is insufficient to modify custody. Hensgens v. Hensgens, 94-1200, p. 13 (La.App. 3rd Cir.3/15/95), 653 So.2d 48, 55, writ denied, 95-1488 (La.9/22/95), 660 So.2d 478. Furthermore, from the record, it appears that the “preference” may have been influenced by other individuals telling the girls that the judge and attorneys want them to live with their mother.
Moreover, it is well established that stability of environment is a factor taken into account in determining what is in the best interest of the children. A change from a stable environment should not be made absent a compelling reason. Hensgens, 94-1200 at 15, 653 So.2d at 56. Standards and clear boundaries are necessary in modification eases in view of evidence “that more harm is done to children by custody litigation, custody changes, and interparental conflict, than by such factors as the custodial parent’s post divorce amours, remarriage, and residential changes, which more often precipitate custody battles under liberal custody modification rules than | ^conduct that is obviously harmful to the child, such as abuse or serious neglect, which justifies intervention to protect the child under the court’s civil or juvenile jurisdiction.” Haik v. Haik, 94-563, p. 8 (La.App. 5th Cir.12/14/94), 648 So.2d 1015, 1020, writ denied, 95-0146 (La.3/17/95), 651 So.2d 271 (quoting Bergeron v. Bergeron, 492 So.2d 1193, 1199 (La.1986)).
Finally, as to the allegations of the use of unnecessary force and abuse by the appellant when disciplining the girls, he testified, and the girls confirmed in their depositions, that he no longer uses corporal punishment to discipline them. Consequently, it no longer presents an issue of concern.
Thus, we find no material change in circumstances evidenced in this record that would warrant a change in the eo-domiciliary, equal sharing, joint custody arrangement, set forth in the August 7, 1995 stipulated judgment. The proposed change must be in the best interest of the child. Here, the children have fared very well under the current plan. They are well-adjusted children that receive high marks in school. They also participate in various activities with both families, including attending church each week with appellant and singing in the choir at appellant’s church.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is vacated and set aside, and the August 7, 1995 stipulated judgment is reinstated. Costs of this appeal are assessed to appellee, Janet Smith Perkins.
VACATED AND SET ASIDE; JUDGMENT REINSTATED.

. On appeal, appellee argues that she was not required to prove a material change in circumstances to modify custody because in the stipulated judgment of August 7, 1995, the parties included a provision for modifying custody without the requirement of establishing a change in circumstances. This argument, however, is without merit. While it is true that parties may stipulate to certain facts, such agreements cannot be contrary to law. The applicable codal provisions and the jurisprudence interpreting those provisions are designed to protect the best interest of the children. It has been determined by the Louisiana legislature and the judiciary that custody should not be changed absent a material change in circumstances and a showing that modification of custody is in the children’s best interest. Thus, the parties’ attempt to circumvent the law cannot prevail over the interests of the children.

. La. C.C. art. 134 provides:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1)The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
*789 (12) The responsibility for the care and rearing of the child previously exercised by each party.