809 So.2d 373 (2001)
Ann DETTMAN
v.
Christopher RABLEE.
No. 2001 CU 1228.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*374 Jennifer Matte, New Orleans, for Plaintiff-Appellant Ann Dettman.
Rebecca N. Robichaux, Raceland, for Defendant-Appellee Christopher Rablee.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
CLAIBORNE, J.
This appeal arises out of a trial court judgment sustaining the objection of the father of two children to the mother's notice to relocate the minor children out of state. Appellant also seeks review of the trial court's denial of her request for attorney's fees and court costs in her rule to make unpaid child support executory and for contempt.

*375 FACTS AND PROCEDURAL HISTORY[2]
Ann Dettman and Christopher Rablee are the parents of two children, Lillian (Lilly), born July 16, 1997, and Thomas (Tommy), born January 15, 1999.[3] The parties were never married. Pursuant to considered custody decrees rendered October 16, 1998, and March 12, 1999,[4] the parties were awarded the joint custody of Lilly and Tommy, with Ms. Dettman named the domiciliary parent. Mr. Rablee was granted visitation, which was ultimately established in the second custody decree, for every other weekend and alternating holidays.
On April 26, 2000, Ms. Dettman filed a rule seeking permission to relocate the children to Indiana. Mr. Rablee responded by filing an opposition to the proposed relocation and a request for a change of custody. He also filed a rule for contempt alleging interference with his visitation rights. The parties entered into a consent judgment on May 26, 2000,[5] in which the rule to relocate was dismissed, as was Mr. Rablee's request for change of custody. Ms. Dettman also consented to a judgment of contempt for interference with Mr. Rablee's visitation,[6] and further agreed that the minor children would not be removed from the state without the consent of the other parent. Finally, Mr. Rablee was granted additional visitation pursuant to this judgment.[7]
On July 14, 2000, less than two months after entering into this consent judgment, Ms. Dettman again attempted to relocate the children to Indiana by sending Mr. Rablee notice of her intent to relocate. Mr. Rablee again responded by filing an opposition to the proposed relocation and a rule to change custody. Ms. Dettman also filed a rule for contempt based on Mr. Rablee's failure to pay child support as previously ordered by the court.
In the notice to Mr. Rablee, Ms. Dettman set forth the reasons that she wished to move to Indiana. Specifically, she expressed a desire to be close to her family in Michigan. She also stated that she had found employment in Indiana, and that she felt the children had better educational opportunities there.
The trial court conducted evidentiary hearings on September 1 and 27, 2000. At the time of the hearings, Lilly was three years old and Tommy was 20 months old. Both children were born in Thibodaux and had lived there with their mother and half-brother since birth.[8] The children's visitation with Mr. Rablee had been sporadic early in their lives, but for several months *376 prior to the hearing, Mr. Rablee had been exercising regular and consistent visitation.[9]
Ms. Dettman testified that she had grown up in Michigan but had come to Louisiana to complete her education at Nicholls State University. Her mother continued to reside in Sturgis, Michigan, and certain other family members lived in Michigan as well.[10] Ms. Dettman expressed a desire to relocate to Elkhart, Indiana, with the children. According to her testimony, Elkhart is five miles south of the Michigan border, and is approximately thirty-five miles from her mother's home in Sturgis. Ms. Dettman testified that being close to her family so that her children could get to know their extended family was a major factor in her desire to relocate.
Ms. Dettman was employed as a certified school psychologist in the Lafourche Parish school system making $31,351 per year at the time of trial. She had obtained comparable employment in her field in Elkhart and would be making $35,853 with an increase of one to three percent the next year. Ms. Dettman also testified that in the job in Elkhart she would be working four fewer weeks per year and would be on the same schedule as the children, thus reducing the time the children would need to be in day care or with a babysitter.
The issue of Mr. Rablee's visitation with his children was also addressed in the notice sent to Mr. Rablee, as well as in Ms. Dettman's testimony at trial. Ms. Dettman proposed that Mr. Rablee travel to Elkhart at his expense once a month for the nine months of the school year while she was working. He would then be able to visit with the children for four consecutive days in Elkhart. She further proposed that she would take the children down to Thibodaux for three one-week visitation periods during the summer months at her expense. This, she reasoned, would keep the travel costs for each party approximately equal, and would allow Mr. Rablee the same amount of time with the children that he would have had under the visitation schedule in effect at the time.[11]
Although Ms. Dettman stated that she did not want to interfere with Mr. Rablee's visitation, she expressed continued resistance to other suggested visitation arrangements during her testimony. She did not appear open to allowing the children to fly down to Louisiana to visit with their father during the nine months that she would be working. She was also extremely resistant to allowing the children, who were not yet school age, to come to Louisiana to live with their father for either six or three month periods. As to each of these proposals, Ms. Dettman expressed her preference to remain in Louisiana if the court were to require her to comply with one of them.
After weighing all of the testimony and the evidence, the trial court determined that it would not be in the best interest of *377 the children for them to be removed from the state and relocated to Indiana away from their father. Accordingly, the trial court rendered judgment upholding Mr. Rablee's opposition to the proposed relocation. The trial court denied Mr. Rablee's request for a change of custody, however, stating that he had failed to meet the heavy burden necessary under Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).[12]
At the hearings, Mr. Rablee consented to a judgment of contempt for his failure to pay child support as ordered. Although the judgment made the arrearage executory, the trial court did not award attorney's fees or costs to Ms. Dettman. From these rulings, Ms. Dettman now appeals urging two assignments of error.

ASSIGNMENTS OF ERROR
The appellant sets forth two assignments of error in her brief: (1) the trial court abused its discretion in sustaining the opposition of the father to the notice to relocate; and (2) the trial court abused its discretion in not awarding attorney's fees to appellant for her successful rule for contempt for failure to pay child support.

STANDARD OF REVIEW
An appellate court may not set aside a trial court's finding of fact absent manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). A child custody matter must be viewed within the context of its own particular set of facts. A trial court's determination in such matters is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. Connelly v. Connelly, 94-0527, pp. 4-5 (La.App. 1st Cir.1994), 644 So.2d 789, 793.

DISCUSSION

ASSIGNMENT OF ERROR NO. 1
A parent who seeks to remove his or her children from the jurisdiction of the court has the burden of proving that: (1) there is good reason for the move, that is, that the move is made in good faith; and (2) the move is in the children's best interest. La. R.S. 9:355.13; Pittman v. Pittman, 94-952, p. 3 (La.App. 5th Cir.3/15/95), 653 So.2d 1211, 1212, writ denied, 95-1526 (La.9/29/95), 660 So.2d 881; Franz v. Franz, 98-3045, p. 7 (La.App. 4th Cir.6/16/99), 737 So.2d 943, 946. In making its determination regarding a proposed relocation, the court is required to consider the following factors pursuant to La. R.S. 9:355.12:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.

*378 (5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.
In its oral reasons for judgment, the trial court addressed these factors. The court did find that Ms. Dettman's reasons for moving were valid to an extent. Nevertheless, the trial court prohibited the relocation by determining that the move was not in the best interest of the children.
Ms. Dettman argues on appeal that it is in the best interest of Lilly and Tommy that she be allowed to move them to Indiana. In support of this argument, she claims that the factors enumerated in La. R.S. 9:355.12 weigh more heavily in her favor. She addresses each of these considerations in her brief, and in each instance, concludes that Lilly and Tommy would be best served by moving to Indiana with her.
After a thorough review of the record, and in light of the great discretion afforded the trial court in child custody matters, we cannot say that the trial court was clearly wrong in its determination that the proposed relocation would not be in the best interest of the children.
In addressing the factors enumerated in La. R.S. 9:355.12, the court acknowledged that Ms. Dettman had raised the children from birth, and that she therefore had a close, personal bond with them. The court also found, based on the evidence introduced at trial, that a bond between Lilly and her father had been established for some time and was getting stronger. In coming to this conclusion, the court found significant the testimony of the children's babysitter that Lilly gets very stressed when the visitation with her father is sporadic or irregular.[13] In addition, testimony introduced at trial demonstrated that Lilly became excited at the prospect of seeing her father, and that she often wanted to stay longer with him when it was time to return home from her visitation. Regarding Mr. Rablee's relationship with his son, the court determined that Tommy was bonding with his father at that time.
The court found that there were no other significant persons in the children's lives whose relationships with the children would be affected by the move. The record reveals that the children had no significant contact with members of their extended family on either side. Therefore, the children's relationships with their parents were the only ones to be considered.
In his oral reasons for judgment, the trial judge expressed his belief that the relationship between a father and his children is just as important as that between the mother and the children. The court further expressed concern about the negative impact that the loss of the bond with the father may have on the children. In that regard, the court stated:
I think their physical, educational and emotional development is at a crucial stage right now. And I think if a child is prevented from bonding with the father *379 at this stage in their [sic] life, they [sic] can never get that back.
The court went on to find that the proposed move would not be in the best interest of Tommy and Lilly because it would effectively terminate their relationship with their father.
In its analysis, the court placed particular emphasis on what appeared to be a history of manipulation and control by the parties in their dealings with each other. The court noted that both parties tended to go out of their way to control things, but specifically found that the mother tried to control many, if not all, aspects of the father's visitation with the children. The record reflects numerous examples of Ms. Dettman's efforts to control the manner, method, and circumstances in which Mr. Rablee would spend time with his children. These attempts at control would include whether or not the visitation occurred at all, the length of the visit, the place of the visit, and even whether or not the visit was supervised.[14]
The trial court further emphasized the importance of Ms. Dettman's testimony as to the way the visitation was occurring at the time of the hearing. Throughout the hearing, Ms. Dettman had testified extensively about Mr. Rablee's inconsistency in visiting the children early in their lives. However, at the time of the hearing, Mr. Rablee had been exercising more consistent visitation for several months. During her testimony, Ms. Dettman stated that this more consistent visitation by Mr. Rablee was the way things ought to be. Nevertheless, her actions in fact made visitation by the father more difficult. The court suggested that the change to a more consistent visitation was beneficial to the children.
Much of Ms. Dettman's argument on appeal consists of challenges to the credibility of Mr. Rablee, and conclusions that the trial court should have accepted her version of events over that of Mr. Rablee. She also argued that the court gave greater weight to the father's rights than to the children's best interests. The court, however, held that it was in the best interests of the children to have a relationship with their father. Moreover, the relationship of the father with the children is certainly a valid issue, since the circumstances (and the statute) required the judge to consider whether the established pattern of conduct of the parent seeking the relocation was to thwart the relationship of the children and their father. The standard of review requires that great deference be given to the trier of fact's findings when those findings are based on determinations regarding credibility of witnesses. Connelly, 94-0527 at p. 10, 644 So.2d at 796. Based upon the record before us, and considering the vast discretion given to the trial court, we do not find that the trial court erred in its determination that the move was not in the best interest of the children. We find no merit in appellant's first assignment of error.

ASSIGNMENT OF ERROR NO. 2
In her second assignment of error, Ms. Dettman argues that the trial court erred in denying her request for attorney's fees and costs in the rule for contempt filed against Mr. Rablee for his failure to pay child support. We agree.
At the hearing on September 1, 2000, Mr. Rablee consented to a finding of contempt for failure to pay child support as ordered by the court and admitted to the *380 amount in arrears. Upon conclusion of the hearing on September 27, 2000, the trial court made the arrearages executory. The trial court, however, denied Ms. Dettman's request for attorney's fees and costs stating:
I thought a lot about that. I believe that because of the actions of both parties toward each other in this case, each party is going to bear their own cost and their own attorney's fees. It doesn't always go that way in contempt rules. But in this particular case I am not happy with the actions and interactions of both parties toward each other. And I have the right, even though there is contempt in this case, to either order it or not order it. And I am not ordering it.
La. R.S. 9:375 A provides:
When the court renders judgment in an action to make executory past-due payments under a spousal or child support award, or to make executory past-due installments under an award for contributions made by a spouse to the other spouse's education or training, it shall, except for good cause shown, award attorney's fees and costs to the prevailing party.
In Authement v. Authement, 96-1289, p. 15 (La.App. 1st Cir.5/9/97), 694 So.2d 1129, this court considered the application of La. R.S. 9:375 B, which provides for mandatory attorney's fees and costs to the prevailing party in an action to enforce child visitation rights "except for good cause shown." The trial court's denial of attorney's fees was affirmed on the ground that the action to enforce visitation rights was filed in response to an action to recover child support arrearages, and that a great disparity in the financial means of the parties furnished additional "good cause" not to assess attorney's fees. Authement, 694 So.2d at 1137.[15] However, in Trahan v. Trahan, 405 So.2d 1160, 1161 (La. App. 1st Cir.1981), this court held that a successful rule to reduce child support filed in response to a rule to make past-due payments executory is not "good cause" to prevent an award of attorney's fees for the executory judgment.
Varying degrees of the trial court's discretion, with respect to a finding of "good cause shown," have been recognized by the jurisprudence.[16] However, there appears to be less trial court discretion on the matter of "good cause shown" to deny attorney's fees in cases in which there has been a failure to provide child support triggering the application of La. R.S. 9:375 A or its antecedent, La. R.S. 9:305 (now repealed). See Thibodeaux v. Thibodeaux, 383 So.2d 125 (La.App. 3rd Cir.1980) (although there was a bona fide issue on the question of retroactivity of a Supreme Court decision with respect to alimony payments under a statute awarding alimony pendente lite only to women, attorney's fees in favor of the prevailing party were proper); Calongne v. Perez, 393 So.2d 777 (La.App. 4th Cir.1981) (although a judgment of past-due support was reduced on appeal, the debtor was required to pay attorney's fees); Broussard v. Broussard, *381 617 So.2d 1187 (La.App. 4th Cir.1993) (where there was a judgment on a rule, making past-due amounts executory, a successful counter-rule for reduction of child support could not prevent an award of attorney's fees to the prevailing party in the proceedings to make past-due payments executory; also, the fact that the debtor was in financial straits was not good cause to defeat the award for attorney's fees). But cf. Harris v. Harris, 505 So.2d 835 (La.App. 2nd Cir.1987) (an honest misunderstanding as to the effective date of support obligations was held to be good cause for not awarding attorney's fees and costs to the prevailing party).
Payment of arrears just before trial does not relieve the debtor from paying attorney's fees. Hilbun v. Hilbun, 498 So.2d 1127 (La.App. 3rd Cir.1986); Gardner v. Gardner, 366 So.2d 1022 (La.App. 1st Cir.1978).
In the case of pure contempt of court proceedings not filed for the purpose of making past-due payments executory, the discretion of the trial court, both as to a finding of contempt and as to the punishment including attorney's fees, is somewhat greater. See Martin v. Martin, 98-165 (La.App. 3rd Cir.6/3/98), 716 So.2d 46.
In the present case, the court must determine what circumstances, if any, warrant an exception from the general rule that attorney's fees are to be awarded under the statute.
Because of the stipulations entered into between the parties in this matter, there was no substantial testimony with regard to Mr. Rablee's failure to pay child support. Mr. Rablee owed $3,936 in past due child support. As a result, the trial court held him in contempt and ordered him to pay Ms. Dettman $150 per month for the arrearages. Mr. Rablee was also placed on two years unsupervised probation, during which time he would be required to remain current on all child support obligations and arrearages. Mr. Rablee offered no justification for his failure to pay. The fact that the rule to make arrearages executory may have been filed in response to the father's rule objecting to the relocation and for contempt does not necessarily evoke the rules of Authement and Trahan in the converse situation.
The record before us is devoid of any evidence of "good cause" that would override the mandatory terms of La. R.S. 9:375 A. Despite the fact that the trial judge was not pleased with the behavior of the parties toward each other, there can be no doubt that Ms. Dettman was entitled to the payment of the child support from Mr. Rablee. He failed to pay, and Ms. Dettman was required to file a rule to enforce payment. No evidence of good cause was presented. Therefore, Ms. Dettman was entitled to attorney's fees and those costs associated with the rule, which resulted in a judgment making past due amounts executory. All other costs were within the vast discretion of the trial court.

CONCLUSION
For the foregoing reasons, we affirm the part of the trial court's judgment prohibiting appellant from relocating the minor children to another state. We reverse that part of the decision denying appellant attorney's fees and costs in connection with the rule for contempt resulting in the judgment making child support arrearages executory. This matter is remanded to the trial court for proceedings not inconsistent with this opinion. Costs to be shared equally by the parties.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PARRO, J., concurs.

*382 "Appendix A"

Ann Dettman v. Christopher Rablee

No. 2001 CU 1228

Chronological History of the Case
08/25/98 Attorney Dexter A. Gary filed a rule on behalf of Ann Dettman, together with interrogatories, for sole custody and child support. The rule was set for hearing 9/11/98.
09/09/98 The hearing was continued on plaintiff's counsel's motion to 10/16/98.
10/07/98 Christopher Rablee filed an answer and reconventional demand seeking joint custody.
10/16/98 The hearing was held resulting in a grant of joint custody with plaintiff as custodial parent, with visitation rights and tax exemption awarded to defendant. The court set the monthly amount of child support defendant owed to plaintiff, which was made retroactive to the date plaintiffs rule was filed.
02/12/99 Attorney Joan M. Malbrough filed a motion to enroll as counsel for plaintiff, which was signed on 2/18/99.
02/12/99 Although judgment had not been submitted and signed yet, attorney Joan Malbrough filed a rule on behalf of Ann Dettman to modify custody to sole custody. The rule was set for hearing on 3/12/99.
03/12/99 The parties entered a stipulation with regard to the amount of child support owed. After a hearing, joint custody with plaintiff as custodial parent was maintained. The court set forth a schedule of visitation for defendant. Plaintiff was ordered not to leave the state of Louisiana with the children without court approval. An income assignment order to go into effect in the event of any 30-day delinquency was also ordered.
08/18/99 The judgment on the 10/16/98 hearing was submitted, and signed on 8/19/99.
09/01/99 Attorney Dexter A. Gary was allowed to withdraw as counsel for plaintiff.
10/27/99 Judgment on the 3/12/99 hearing was submitted, and signed on 10/28/99.
11/15/99 Attorney Joan M. Malbrough was allowed to withdraw as counsel for plaintiff.
03/20/00 Ann Dettman, in proper person, filed an ex parte order for income assignment. (It was denied on 3/22/00 and plaintiff was ordered to proceed by rule.)
04/26/00 Attorney Henry J. Lafont, Jr. filed a rule on behalf of Ann Dettman, for court authority to leave the state of Louisiana with the children to relocate in the state of Indiana. The hearing was set for 5/26/00.
05/18/00 Defendant filed a rule for contempt for failure of plaintiff to permit visitation, and for a change in custody so as to make him the domiciliary parent, and objected to plaintiffs removal of the children from the state. It was set for hearing on 5/26/00.
05/26/00 Hearing on the reciprocal rules was held. An agreement was reached between the parties which was made the judgment of the court. Plaintiff's rule to relocate was dismissed as was defendant's rule for change of custody. Plaintiff was found guilty of contempt and sentenced to ten (10) days in jail, suspended, on condition that she not interfere with or deny future visitation by defendant. Children were not to be removed from the state without consent of the other parent. Any visit outside Louisiana would not exceed 30 days and would not deprive the other parent of court ordered visitation. Visitation was fixed except for holidays and birthdays. Child support was reduced. All *383 prior judgments were to remain in effect insofar as they did not conflict with the new judgment.
06/26/00 Ann Dettman addressed a letter to the Judiciary Commission making a complaint against the judge for the handling of this case.
07/14/00 Plaintiff addressed a letter to defendant notifying him that she intends to relocate to Indiana and to take the children with her.
07/24/00 Defendant filed a rule objecting to the move out of state, praying to be made domiciliary parent, and further praying that plaintiff be held in contempt for failure to comply with the judgment of 5/26/00. (The judgment of 5/26/00 had not been submitted or signed yet.) The rule was fixed for hearing 8/9/00.
08/07/00 Attorney Jennifer Matte filed a motion to enroll as counsel for plaintiff, which was signed on 8/9/00.
08/07/00 Attorney Jennifer Matte filed a motion to continue on behalf of Ann Dettman, and the matter was continued to 8/18/00.
08/07/00 Attorney Henry J. Lafont, Jr. filed a motion to withdraw from representation of plaintiff.
08/09/00 Attorney Jennifer Matte, on behalf of plaintiff, filed a motion to recuse the judge from the case.
08/14/00 The judge recused himself from the case because the plaintiff had put herself in an adversarial position with the judge. The case was reallotted to Division A.
08/17/00 Judgment on the 5/26/00 hearing was submitted. It was signed by the new judge on 8/22/00. This judgment was in accordance with the agreement reached 5/26/00.
08/24/00 Attorney Jennifer Matte filed a rule, on behalf of the plaintiff, to make past due support payments executory and for contempt. The plaintiff further prayed that she be allowed the federal and state tax exemptions for the children, that defendant's license be suspended, and that an income assignment order issue. The hearing on the rule was assigned for 9/01/00.
08/29/00 Defendant filed a motion to have his rule of 7/24/00 heard on 9/01/00, the same date as plaintiff's rule. Motion was granted.
09/01/00 Hearing on reciprocal rules began. Defendant stipulated he was in arrears in his payments. The matter was continued to 9/19/00. (Apparently nothing occurred on 9/19/00.)
09/27/00 The hearing was resumed. The court ruled that relocation was not in the best interest of the children. Custody was to remain as previously ordered. Visitation was altered. Plaintiff was not found in contempt. Arrearages were made executory. Defendant was found in contempt, placed on unsupervised probation for two years, and he was ordered to pay $125 on arrearages in addition to his monthly support payments. Federal and state tax exemptions were granted to the plaintiff until arrearages were paid in full, and thereafter to revert to defendant. The court denied plaintiffs prayer for suspension of defendant's license, and denied her prayer for attorney's fees.
02/05/01 Attorney Jennifer Matte filed a rule for contempt and increase in child support on behalf of the plaintiff. It was assigned for hearing on 4/02/01.
02/08/01 Judgment on the 9/27/00 hearing was signed. It was subsequently filed on 2/09/01.
03/09/01 Plaintiff filed a motion for devolutive appeal.
*384 03/16/01 Motion filed by defendant to continue the 4/02/01 "trial."
03/16/01 Response to request for production was filed by defendant.
03/19/01 The 4/02/01 "trial" was continued to 5/23/01 pursuant to the motion of 3/16/01.
03/21/01 The motion for devolutive appeal filed 3/9/01 was granted.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] A complete chronological history of the pleadings and other proceedings is attached to this opinion, as "Appendix A."
[3] Ms. Dettman has another child by a previous marriage of whom she is also the domiciliary parent. This child, Charlie, was five years old at the time of the hearing in this matter.
[4] The judgments were rendered on the above dates, but not signed until August 19, 1999, and October 28, 1999, respectively.
[5] The judgment was filed on August 17, 2000, and signed on August 22, 2000.
[6] Ms. Dettman was sentenced to ten days in jail, suspended on the condition that she not interfere with and/or deny any future visitation rights of Mr. Rablee.
[7] Mr. Rablee was granted visitation for one week per month during the months of June, July, and August in addition to his weekend and holiday visitation.
[8] There was testimony that Ms. Dettman, Lilly, and Charlie had moved out of state for a few months while she was pregnant with Tommy. While the specific length of that move is not clear, they returned prior to Tommy's birth and have lived in Thibodaux ever since.
[9] The testimony was that Mr. Rablee had been exercising regular visitation since entering into the consent judgment.
[10] The testimony at trial was that Ms. Dettman's mother, grandparents, and one brother lived in Michigan. Her mother was the only one who lived in Sturgis, however. Her father had lived in Michigan but was on his way to live in New Mexico at the time of the hearing on September 1, 2000. Ms. Dettman's other brothers lived in New York and Kentucky. Since the hearing, Ms. Dettman's grandparents have passed away.
[11] As noted previously, Mr. Rablee was granted visitation consisting of every other weekend, alternating holidays, and one week in each of the months of June, July, and August. Ms. Dettman's plan makes no mention of the alternating holidays portion of the visitation award.
[12] Mr. Rablee has not appealed the denial of the change of custody. The issue is therefore not before the court.
[13] Based on the testimony, the court concluded that Lilly would become stressed if she did not see her father for thirty days.
[14] There was never any court order requiring that Mr. Rablee's visits with the children be supervised.
[15] Authement has been abrogated in part by Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, only on the improper use of a "substantial change" rather than a "change" in circumstances as a standard for increases or decreases in child support. Authement has not been reversed and remains as authority on the question of the award of attorney's fees under La. R.S. 9:375 B.
[16] In a case involving child visitation rights, bad legal advice was found to be good cause shown within the trial court's discretion. Cheramie v. Cheramie, 429 So.2d 203, 206 (La.App. 1st Cir.), writ denied, 434 So.2d 1095 (La.1983).