737 So.2d 943 (1999)
Conrad H. FRANZ, Jr.
v.
Roseanne T. FRANZ.
No. 98-CA-3045.
Court of Appeal of Louisiana, Fourth Circuit.
June 16, 1999.
Debra M. Kesler, Metairie, LA, Counsel for Plaintiff.
*944 Elizabeth Rue Brennan, Bridgeman Law Firm, New Orleans, LA, Counsel for Defendant.
Court composed of Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER and Judge PATRICIA RIVET MURRAY.
WALTZER, Judge.

STATEMENT OF THE CASE
On 20 January 1995, Conrad Franz, Jr. filed a petition to divorce his wife, Roseanne T. Franz and the trial court rendered judgment of divorce on 28 June 1995. On 5 March 1997, Roseanne filed a rule to establish custody, child support and to partition community property and on 20 March the trial court awarded the parties joint custody of the children, with Roseanne as the primary domiciliary parent.
On 19 September 1997, Conrad moved to modify custody to name him primary custodial parent, alleging that Roseanne had taken the children out of the jurisdiction without leave of court and was living in open concubinage with a married man, Guillermo A. Ramos. On 5 November 1997, the trial court entered a consent judgment granting the parties joint custody with Roseanne remaining primary custodial parent subject to reasonable visitation by Conrad, ordering Conrad to pay $660 per month child support, one-half of Samantha's Catholic school tuition and expenses, and a $705 child support arrearage. Conrad was also ordered to provide and maintain the present policy of major medical, health, hospitalization and dental insurance for the minor children. On 29 January 1998, a second consent judgment was rendered pursuant to which the parties agreed in part to provide each other with pertinent information concerning the children, including school progress reports, report cards and medical treatment, within 48 hours of receipt of the information.
On 9 June 1998, Conrad filed an Objection to Roseanne's intent to move to Atlanta, Georgia, alleging that such a move would be detrimental to the minors and would interfere with the father-children relationship. The next day, Conrad filed a rule to restrain Roseanne from leaving the state until a hearing could be held. The trial court heard the matter on 30 June 1998 and appointed a mental health evaluator. After having taken the matter under advisement, the trial court entered judgment on 27 July 1998 granting the rule to prohibit relocation of the children to Atlanta. On 24 August 1998 Roseanne moved for a devolutive appeal of that judgment[1]. Finding no error in the trial court's judgment, we affirm.

STATEMENT OF FACTS
Conrad and Roseanne Franz were married on Orleans Parish on 8 January 1988. Of that marriage, two children were born, Samantha Lynn, born 5 March 1989, and Conrad III, born 6 November 1992.
Roseanne testified at the relocation hearing that she married Mr. Ramos about a week prior to the hearing. She is a certified teacher, but did not have a job in Atlanta at the time of the hearing. She testified that during 1997 Mr. Ramos earned about $15,000 and she earned $23,900 as a teacher in East Baton Rouge Parish. Mr. Ramos moved to Atlanta on 18 May and took a job paying him $35,000 annually. Roseanne testified that she intended to move to Atlanta with the children, and would live, at least temporarily, with her parents. She offered to pay the *945 cost to fly the children to New Orleans once a month to visit their father and to arrange a second monthly visit by alternative transportation. Mr. Ramos would accompany the children at his expense. Conrad testified that he would be willing to pay part of the transportation expenses in order to be able to see his children more frequently, although the cost would create a substantial financial hardship for him.
Mr. Ramos' former wife testified that she was then in the process of trying to make arrangements with him for the support of their three children. Mr. Ramos paid her $450 monthly child support. The children had attended St. Dominic's Catholic school for six years; however, at the time of the relocation hearing, their mother was engaged in litigation to require Mr. Ramos to pay their tuition.
Roseanne testified that her parents live in Atlanta and her aunts live in New Orleans. The children have friends in Atlanta, where they have visited every summer from three to seven weeks. Conrad testified that they had never stayed that long in Atlanta. According to Roseanne, since moving to Baton Rouge she has transported the children to their visits with Conrad, who had not traveled to Baton Rouge to visit the children or to participate in their extra-curricular activities. Conrad testified that Roseanne failed to advise him of the children's activities.
Roseanne admitted that she had not incurred any moving expenses or made any deposits in Atlanta at the time of the hearing, and that she had chosen to retire from her position as a Jefferson Parish school teacher.
Conrad testified that he is Commander of Incident Management for the Causeway Police Department. His hours are totally flexible, as long as he works eight hours in a day. He testified that it would work a hardship on him to have to drive eight hours to visit the children in Atlanta. If he were to become the children's primary custodial parent, he testified he would not seek child support from Roseanne.
He testified that when the children lived in New Orleans, they were enrolled in baseball and gymnastics, and he took them to their activities every Saturday. According to Conrad, after the children were moved to Baton Rouge, that activity ended. When he had weekend visitation, he took the children to the Aquarium, the lake and other similar venues, and spent time with them. He testified that after the move to Baton Rouge he was unable to participate in their daily lives or to help them with their homework. He expressed concern that a move to Atlanta would further restrict his contact with the children. He also testified that he did not want the children living with Roseanne's parents in Atlanta because of "bad blood" between him and the grandfather, and because of his fear that the grandfather is unstable. The grandfather seriously damaged Conrad's car with a hammer while in a rage. Conrad witnessed the grandfather slap Roseanne's mother in the face, and had to step between the grandfather and Roseanne to protect her on an occasion when she had stayed out past her curfew.
He testified that if he becomes the primary custodial parent, he will live with the children in his three bedroom home. He earns $28,000 to $30,000 annually and pays $660 a month in child support. His mother is available within an hour to help with the children. The majority of the family lives in Louisiana, including aunts and uncles on his side and cousins, aunts and uncles on Roseanne's side.
The trial court in its reasons for judgment found the following facts:
 Roseanne established that the proposed relocation was made in good faith.
 The parents appear to be doing their best to cooperate in raising their two minor children.
 Roseanne, as domiciliary parent, has taken every opportunity to encourage a close relationship between the children and Conrad.
*946  Conrad has demonstrated his desire to cooperate with Roseanne concerning the children's welfare.
 Since the parties entered into their consent custody arrangement there have been few problems arising between the parents requiring judicial intervention.
 Mr. Ramos is making an annual salary of $35,000 in Atlanta.
 Roseanne does not currently have employment in Atlanta and has resigned from her previous employment in Baton Rouge.
 Mr. Ramos is obligated to pay child support to his children from a former marriage.
 Roseanne made a commitment to purchase two round trip airline tickets to New Orleans monthly so that the children can visit with their father. However, this promise, while sincere, is impractical and unrealistic in view of her current financial status.
 If the children were ordered to travel from Atlanta to New Orleans by bus, they would have to endure approximately 14 hours and 960 miles of travel.
 The children have strong ties to both parents and to members of the extended family who reside within the jurisdiction of the court.
 Relocation will relegate Conrad to weekend visitation several times a year and will limit the personal, mental and parental growth between Conrad and his children.
 The move to Atlanta, Georgia is not in the best interest of the minor children because of the detrimental effects on the father-children relationship and the impractical and unrealistic proposed solution advanced by Roseanne.

STANDARD OF REVIEW
It is well settled that, absent an abuse of discretion, the trial court may permit a custodial parent to remove his or her children from the jurisdiction of the court. Pattison v. Pattison, 208 So.2d 395 (La.App. 4 Cir.), writ refused, 252 La. 168, 210 So.2d 52 (1968); Fayard v. Fayard, 181 So.2d 304 (La.App. 4 Cir.1965), writ refused, 248 La. 1032, 183 So.2d 652 (1966). A parent who seeks such a relocation has the burden of proving (1) that there is good reason for the move, that is, that the move is made in good faith; and (2) the move is in the child's best interest. Pittman v. Pittman, 94-952 (La.App. 5 Cir. 3/15/95), 653 So.2d 1211, 1212, writ denied, 95-1526 (La.9/29/95), 660 So.2d 881; La. R.S. 9:355.13.
The 1997 Louisiana Relocation Statute, La. R.S. 9:355.1 et seq. provides in pertinent part that a parent seeking to relocate the child's principal residence shall not, absent consent, remove the child pending resolution of the dispute or final order of the court, unless the parent obtains a temporary court order to do so. La.R.S. 9:355.5. The record is clear that Roseanne violated this provision, removed the children from this jurisdiction without Conrad's consent or court order, and did not return them to Louisiana until forced to do so by order of the lower court.
In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
1] nature, quality, extent of involvement and duration of child's relationship with relocating and with non-relocating parents, siblings and other significant persons in the child's life;
2] child's age, developmental stage, needs and likely impact of relocation on his physical, educational and emotional development;
3] feasibility of preserving the relationship with the non-relocating parent through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;
4] child's preference, taking into consideration his age and maturity;
5] established pattern of conduct of parent seeking relocation, to promote or *947 thwart child's relationship with non-relocating parent;
6] will relocation enhance the child's general quality of life and that of the relocating parent;
7] reasons of each parent for seeking or opposing relocation;
8] any other factors affecting the child's best interest. La.R.S. 9:355.12.
FIRST ASSIGNMENT OF ERROR: There is no evidence to support the trial court's conclusion that relocation would have a detrimental effect on the father-child relationship.
The trial court exercised its discretion to accept Conrad's testimony that he had been an active, involved parent, limited only by his children's residence in Baton Rouge. It is obvious that children generally are advantaged by substantial contact and close relationships with their parents. There is no suggestion in the record that either Roseanne or Conrad exerts a negative influence in any way upon the children. The trial court was presented with testimony that there was "bad blood" between Conrad and his exfather-in-law, and that the grandfather, with whom the children would live at least temporarily in Atlanta, was unstable, and had lost his temper violently with his wife, with Conrad and with Roseanne. The daily presence of their grandfather clearly would not enhance the children's relationship with Conrad.
The trial court apparently accepted Conrad's testimony that the relocation would prevent him from participating actively in the children's upbringing. The evidence clearly demonstrates that until Roseanne removed the children from the New Orleans metropolitan area, Conrad was an active participant in their lives. The trial court did not allow Roseanne to use the limitations on the children's relationship with Conrad caused by her move to Baton Rouge as a basis for a finding that this relationship will not be adversely affected by a further move to Atlanta. We find the trial court did not abuse its discretion in concluding that the relocation would have a detrimental effect on the relationship between Conrad and his children.
This assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR: There is inadequate evidence to support the trial court's conclusion that the visitation solution proposed by Ms. Franz is unrealistic and impractical.
The trial court properly considered the logistics and financial circumstances of the parties. La.R.S. 9:355.12(3). Roseanne's contention, made without citation of authority, that this statute is unconstitutional was not raised below and is not properly before this Court.
There is ample evidence of record to support the trial court's finding that the Ramos family would not be able to bear the financial burden of sending the Franz children on bi-monthly trips to visit their father in New Orleans. Even if we were to assume that Roseanne could obtain the $120 per person round trip fare to which she testified, the record supports the trial court's conclusion that the Ramoses' income is insufficient to cover this expense, over and above their living expenses, taxes and his child support obligation to his three children by his former wife. Of course, if the children remain in New Orleans, Roseanne could visit them at half the cost of the children's proposed transportation.
This assignment of error is without merit.
THIRD ASSIGNMENT OF ERROR: The trial court erred in finding that relocation is not in the best interest of the children.
The trial court found that the first prong of the Pittman test was met; that is, the relocation was made in good faith. Clearly, Mr. Ramos benefits by a substantial increase in his salary, and there is no indication that Roseanne would *948 be unable to obtain suitable employment as a teacher in Atlanta.[2] There is no evidence that Mr. Ramos sought and was unable to obtain comparable employment in New Orleans.
The second prong of the Pittman test quite properly requires a showing that the relocation is in the best interest of the children. See also, La.R.S. 9:355.13. The evidence of financial advantage may demonstrate that relocation to Atlanta is in the best interest of the married couple; however, the Pittman test and the relocation statute refer to the best interest of the children.
We have no evidence of the children's preference or their capacity to formulate and express such a preference. La.R.S. 9:355.12(4). The evidence supports the trial court's conclusion, and is consistent with the remaining factors set out in La.R.S. 9:355.12.
The evidence clearly establishes that removal to Atlanta will place the children at such a distance from Conrad that their contact will be irregular and sporadic. The separated family will lack the proximity necessary for development of true familial relationships. The trial court correctly recognized the importance of such relationships to the children. There was also credible evidence to support the trial court's finding that the children had significant extended family in this jurisdiction with whom contact would be lost through relocation. See, La.R.S. 9:355.12(1).
Clearly, the children need not suffer the loss of maternal influence. Roseanne has the choice of moving to Atlanta or of remaining in Louisiana. Remaining involves only some financial sacrifice by Roseanne and Mr. Ramos. They are not compelled to move to Atlanta. While the move to Atlanta will enhance the economic lives of Roseanne and her new husband, there is no evidence of record tending to show that relocation will enhance the children's general quality of life. La.R.S. 9:355.12(2),(6).
There is no evidence of record that either Roseanne or Conrad is wrongly motivated in seeking or opposing relocation or that either party has a demonstrated pattern of conduct to thwart child-parent relationships. La.R.S. 9:355.12(5), (7).
Our review of the record as a whole convinces us that the trial judge did not abuse his discretion in determining that relocation was not in the best interest of the children.
This assignment of error is without merit.

CONCLUSION AND DECREE
For the foregoing reasons, we find no abuse of the trial court's discretion and affirm the judgment. Costs of appeal are assessed to the appellant.
AFFIRMED.
MURRAY, J., CONCURS.
MURRAY, J., concurs.
Because I agree that the trial judge did not abuse his discretion, I concur in the result.
NOTES
[1] On 11 August 1998, Conrad filed a rule for contempt, alleging that Roseanne had taken the children to live in Atlanta, Georgia, in contravention of the trial court's judgment. On 20 August 1998, Conrad filed a second objection to the relocation and, on 16 September 1998, he filed a motion to set interim custody, visitation schedule and child support. On 26 October 1998, Roseanne filed a motion to hear her second request to move out of state, which the trial court denied by judgment dated 10 March 1999. The correctness or validity of these proceedings is not before this Court. The briefs contain material referring to post-hearing developments which are likewise not before this Court.
[2] Roseanne's statement in brief that she is so employed was not before the trial court at the time the judgment appealed from was rendered. The parties have supplemented the record with a subsequent judgment of the trial court recognizing that Roseanne obtained employment in Atlanta.