818 So.2d 91 (2001)
Jodie Kay NELSON
v.
Thomas Jack LAND.
No. 2001 CU 1073.
Court of Appeal of Louisiana, First Circuit.
November 9, 2001.
*92 Jeffrey S. Wittenbrink, Baton Rouge, LA, for Plaintiff/Appellant, Jodie Kay Nelson.
Deborah P. Gibbs, Baton Rouge, LA, for Defendant/Appellee, Thomas Jack Land.
BEFORE: WHIPPLE, FOGG, and GUIDRY, JJ.
GUIDRY, Judge.
This is an appeal by the plaintiff, Jodie Kay Land Nelson (Ms. Nelson), of a judgment which denied her motion for relocation from Baton Rouge, Louisiana to Williamsville, New York, and instead, awarded her ex-husband, defendant Thomas Jack Land (Mr. Land), in California, domiciliary parent status in the joint custody arrangement of the couple's four children.
Ms. Nelson and Mr. Land were married, had four children and lived in Kalamazoo County, Michigan. They were divorced by a Michigan court judgment dated June 22, 1998. In July, 1998, an order was rendered allowing Ms. Nelson and her four children to change their domicile from Michigan to Baton Rouge, Louisiana and granting Mr. Land, who was living in California, specified visitation. In November, 1998, Ms. Nelson filed a petition in the family court for the parish of East Baton Rouge, Louisiana, seeking to have the prior two judgments made executory. This was done by way of judgment dated January 21, 1999.
The current litigation arose from a certified letter sent by Ms. Nelson to Mr. Land in June, 2000, notifying him of her plans to seek relocation with the children from their home in Baton Rouge to New York. Mr. Land filed a rule to oppose the relocation asking that Ms. Nelson's motion to relocate be denied and seeking to be *93 named domiciliary parent of the minor children.
After a trial, the family court found that the proposed relocation by Ms. Nelson to New York was not in good faith and also was not in the best interest of the children, and denied Ms. Nelson's request to relocate. Further, the court maintained joint custody but transferred the domiciliary parent status from Ms. Nelson to Mr. Land and ordered the immediate transfer of the children to California, with specific and liberal visitation granted to Ms. Nelson. This appeal by Ms. Nelson follows.
On appeal, Ms. Nelson maintains the family court erred as a matter of law in its application of the relocation statute. First, Ms. Nelson asserts that the relocation statute is designed only to apply when both parents live in the same state and one parent wants to relocate to another state. In this case, she argues that since Mr. Land had moved from Michigan to California, and previously consented to her temporary relocation from Michigan to Baton Rouge, he has no right to contest the relocation. Ms. Nelson also asserts the relocation would place the children closer to Michigan, the place they originally left and where extended family still resides. Ms. Nelson also assigns error to the court's finding the proposed relocation was not in good faith. She maintains this finding interdicted the court's reasoning in the remainder of the case; and therefore, a de novo review is warranted. In addition to the errors of law asserted by Ms. Nelson on appeal, she claims the family court misapplied the factors listed in La.R.S. 9:355.12 and committed manifest error in concluding the relocation is not in the best interest of the children.

Application of the Relocation Statute
A parent seeking to remove his or her children from the jurisdiction of the court has the burden of proving that: (1) there is good reason for the move, that is, that the move is made in good faith; and (2) the move is in the children's best interest. La.R.S. 9:355.13; Dettman v. Rablee, XXXX-XXXX (La.App. 1 Cir. 9/28/01), 809 So.2d 373. In making a determination regarding a proposed relocation, a court is required to consider eight factors specified in La.R.S. 9:355.12.
Louisiana's relocation statute, La. R.S. 9:255.1 et. seq, enacted by Acts 1997, No. 1173, § 1, applies to an order regarding custody of or visitation with a child issued on or after August 15, 1997; thus, it is applicable herein. La.R.S. 9:355.2. Nevertheless, Ms. Nelson argues the trial court erred in applying the statute because "1) both parties were originally from Michigan; 2) the Defendant had previously relocated from Michigan to California; 3) The Defendant had consented to the relocation from Michigan to Louisiana; and 4) The Defendant was not willing to relocate to Louisiana, in the event that relocation was denied." However, Ms. Nelson cites no support for her argument. Regarding the fact that Mr. Land now lives in California, in Bullock v. Bullock, 98-0206 (La. App. 4 Cir. 1/29/98), 706 So.2d 671, the court rejected a similar argument that the relocation statute is inapplicable when the non-relocating parent already lives in another state. In that case, the domiciliary parent, the mother, requested approval for a relocation from Louisiana to Alabama. The father was permitted to oppose the relocation based on the court's finding the statute applicable even though the father lived in Mississippi. The court's finding was based on the clear and express language of the statute defining relocation. The appellant has not convinced us that the Bullock opinion is wrong or that it is factually distinguishable from this matter.
*94 Likewise, we find no merit to Ms. Nelson's argument that the statute is inapplicable because Mr. Land had previously consented to the relocation from Michigan to Louisiana, and because that relocation was always intended to be a temporary one. Louisiana Revised Statute 9:355.2C(1) provides that the statute does not apply when "[t]he parents of a child have entered into an express written agreement for the temporary relocation of that child's residence, regardless of the duration of the temporary relocation." Ms. Nelson asserts that Mr. Land agreed to the relocation from Michigan to Louisiana, with the understanding that it was a temporary relocation. She maintains that the proposed relocation to New York would actually bring the children closer to where they left and therefore, 9:355.2C(1) makes the statute inapplicable. While 9:355.2C(1) may have been applicable to the relocation from Michigan to Louisiana, and Mr. Land's consenting to that move may prevent him from opposing a relocation back to Michigan, it is inapplicable to a wholly separate and new request for a relocation to another state.
Finally, appellant cites no support, nor do we find any, for the assertion that the court misapplied the statute because Mr. Land was not willing to move to Louisiana in the event the relocation was denied. Nowhere in the statute or in any of the jurisprudence is there a requirement that the non-relocating parent be willing to move in order to prevent the children's relocation. In this particular case, Ms. Nelson has already moved to New York, even without the court's approval for the relocation. To then require the non-relocating parent to move to Louisiana to prevent the children's relocation would be extremely onerous on an innocent parent and is an absurd and impermissible extension of the law. This assignment is without merit.

Good Faith
In addition to requiring a relocation to be in the best interest of the child, our law requires a showing by the relocating parent that the move is being made in "good faith." La.R.S. 9:355.13. Our jurisprudence has established that improved job prospects of the relocating parent or of that parent's new spouse is sufficient to establish good faith. In Pittman v. Pittman, 94-952, p. 5 (La.App. 5 Cir. 3/15/95), 653 So.2d 1211, 1213, writ denied, 95-1526 (La.9/29/95), 660 So.2d 881, the court provided reasoning for holding that obtaining employment in another state constitutes a good reason for the move:
[I]n today's society, jobs are often difficult to find. It would be unrealistic for us to hold that securing a job in another state does not establish good cause for relocation.... Moreover, we are not entirely comfortable with restricting a person's desire to pursue his or her career in another state.
See also Franklin v. Franklin, 99-1738, p. 8 (La.App. 3 Cir. 5/24/00), 763 So.2d 759, 764 (where good faith was found where the relocating parent's new spouse had been transferred from his employment and was receiving a pay raise in conjunction with the move); Johnson v. Johnson, 99-1933, p. 5 (La.App. 3 Cir. 4/19/00), 759 So.2d 257, 259, writ denied, XXXX-XXXX (La.5/31/00), 762 So.2d 635 (where good faith was found based on the new spouse having accepted a new job with a higher salary and better benefits); Brisbois v. Brisbois, 00-203, p. 8 (La.App. 5 Cir. 8/29/00), 767 So.2d 887, 891 (where good faith was considered "apparent" where mother's new spouse had been laid off due to cutbacks at a nuclear power plant and had been able to find a good job in his very specialized position in Michigan); *95 Franz v. Franz, 98-3045, pp. 10-11 (La.App. 4 Cir. 6/16/99), 737 So.2d 943, 947-948 (where good faith was found where the mother chose to retire from her job as a schoolteacher in Louisiana to move with her husband, to whom she had been married a week, who had obtained a job in Atlanta paying approximately $20,000 more per year than his job in Louisiana).
In assessing Ms. Nelson's good faith in making the move to New York, the trial court found the following:
In this case, Jodie Nelson is seeking to relocate the children's residence to New York. Since January 1997, Jodie Nelson has moved with the children five times. Jodie Nelson and her new husband, Todd Nelson, have already moved to New York. Jodie Nelson's immediate family lives in Michigan, and she has no family in New York. She did not have job offers in New York, nor did her employer relocate her to New York.
Todd Nelson has some family residing in New York. Todd Nelson's father has indicated he intends to donate some land to him in New York, and Todd Nelson intends to build a very large home on this land. There was no evidence introduced as to how he intended to pay for this home. The land, and any home that will be built on that land, will remain Todd Nelson's separate property. After Todd Nelson's father told him he would donate the land to him, Jodie Nelson and Todd Nelson decided to move to New York. Todd Nelson then resigned from his job in Baton Rouge and actively sought employment in the New York area. At the time of trial, Todd Nelson had obtained employment in the New York area.
Based on a review of the evidence, as well as the jurisprudence, this Court cannot find that the proposed relocation of the children's residence is in good faith.
(Emphasis added). On appeal, Ms. Nelson assigns error to the family court's conclusion that the move was not in good faith, asserting that she and her new husband have shown good "economic and justifiable personal reasons" for the move.
Ms. Nelson testified that initially, her move to Louisiana with Todd and her children was intended to be temporary. She and Todd were coming to Louisiana as part of a ministry that "was going to be built and that didn't happen." She and Todd were forced to obtain employment outside the church and move to more affordable housing. Ms. Nelson testified that when the promises for employment and housing through the ministry fell through, their whole reason for living in Louisiana "no longer exist[ed]." Todd, who has a degree in automotive engineering, was offered a promotion through his employment in Baton Rouge; however, the promotion required that he be transferred to Banger, Maine. Because they have no family or connections in Maine, Todd turned down the promotion. At that time, he was told by his employer that he was specifically being trained to take a promotion, which would inevitably require a relocation, as there is little job market in Baton Rouge for his specialty. Todd testified that he applied for employment at Dow, Exxon and other major chemical companies in Louisiana, but did not get any offers or interviews. It was at this point in time that Mr. and Ms. Nelson began contemplating moving back up north, closer to family and friends. In addition to seeking better employment opportunities for Todd, Ms. Nelson said she began considering relocating at that time in an attempt to place the children in a stable school system because of the children's ages and the fact that they were *96 beginning a "perpetual cycle of them (sic) starting high school and there will always be someone entering and leaving."
Todd resigned from his job in Baton Rouge, and was given two months paid leave to find other employment. The impetus for considering New York was that Todd's parents, who live in New York and own some property there, offered to provide financing for the Nelsons to build a large home on some of their property, which they were offering Todd as a "preinheritance" gift. Ms. Nelson testified that their home in New York would be very close to Mr. Nelson's parents and family and would be approximately five hours from her extended family in Michigan and approximately six and a half hours from Mr. Land's extended family in Michigan.
Approximately two weeks prior to trial, Mr. Nelson accepted a job in New York utilizing his specialized area of expertise in automotive engineering and earning approximately eight to ten thousand more per year than his previous employment in Baton Rouge. At the time of trial, Mr. Nelson had already moved to New York, was living with his parents, and beginning the plans for the building of their new home. Ms. Nelson had quit her job in Baton Rouge and was living with friends. She planned to move with her husband in New York within days after the trial and testified that she planned to relocate there irrespective of the court's decision regarding the relocation of the children.
As noted earlier, our jurisprudence establishes that improved job prospects of the relocating parent, or of that parent's new spouse, are sufficient to establish good faith. On this basis alone, it appears that Ms. Nelson has borne her burden of proving good faith. The evidence revealed that Mr. Nelson had obtained new employment in New York earning a better salary than his previous jobs and utilizing his specialized skills and providing advancement opportunities not available with his job in Baton Rouge. Further, the record reflects that Mr. Nelson's job in Baton Rouge would be in jeopardy if he were unwilling to relocate. Additionally, the move to New York would bring the children closer to their maternal and paternal grandparents in Michigan, as well as being with their step-grandparents (Todd Nelson's parents) in New York. The record established that the Nelsons had no family or close ties in Louisiana, and the whole purpose for being in Louisiana had abated when the ministry plans fell through. Finally, the family court found there was no evidence to establish how the Nelsons were going to pay for their new home in New York; however, our review of the record reveals that Todd's parents had offered to provide the necessary financing, as well as help them in the construction of the home. Given the leniency of the good faith showing required in relocation cases, as evidenced in the jurisprudence, we find the family court erred in finding the relocation was not in good faith. The record before us contains more than sufficient evidence to establish that the relocation to New York is in good faith, and the family court manifestly erred in finding otherwise.
Ms. Nelson asserts that the trial court's error regarding Ms. Nelson's good faith interdicted the fact-finding process, making the manifest error standard of review inapplicable and obliging this court to make its own independent de novo review of the record. The family court's error affected its conclusion regarding good faith, which is only one prong of the requisite showing for a relocation; the relocation must also prove to be in the best interest of the children. At first glance, it appears that error as to one prong only *97 would not interdict the court's findings on the second prong. However, upon closer consideration, the "good faith" reasons given by Ms. Nelson for the proposed relocation also have a direct impact on whether the relocation is in the best interest of the children. The court's failure to recognize that good faith is not only manifestly erroneous as to its conclusion on prong one, it also skewed the family court's judgment as to what is in the best interests of the children. Thus, our review of the second prong of the requirements for relocation, the best interest of the children, shall be de novo.

Best Interests of the Children
Louisiana Revised Statute 9:355.12 requires the consideration of eight listed factors in determining the best interests of the children:

(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings and other significant persons in the child's life.

The record reveals that the four children have lived with Ms. Nelson, as the domiciliary parent, since the parties' separation in 1997 and all of the evidence reflects that she has been a good mother, with whom all of the children have a good nurturing relationship. Although the record reveals that Ms. Nelson has moved with the children five times since the separation, the reasons for these moves, as well as Mr. Land's knowledge and consent thereto, are also documented by the record. The first move was out of the matrimonial domicile at the time of the parties' separation, and was at the request of Mr. Land that Ms. Nelson take her things and leave. She was only able to find and afford a "very small apartment in a very bad neighborhood." The second move was out of this apartment, partially at the insistence of Mr. Land who complained that the children's standard of living had been compromised by the move. The third move was to Louisiana, with the plans to build a ministry here; Mr. Land consented to this move. Once the ministry plans and employment promises fell through, Ms. Nelson was forced to move to more affordable housing in Baton Rouge. Finally, the fifth move is the one from Baton Rouge to New York, which is the subject of this appeal. While no one disputes that the frequent moves deprived the children of a healthy sense of stability, the evidence revealed good reasons underlying each of the moves, and there is no evidence that any of these moves had any serious detrimental effects on any of the children.
The record also contains the testimony of Nancy Hammat, the principal of the school attended by three of Ms. Nelson's children while in Baton Rouge. Ms. Hammat testified that Ms. Nelson was the PTO vice-president for two years, she was an active parent volunteer and helped a lot at the school. She stated that Ms. Nelson's children were gifted students, well-balanced, and "very precious," "beautiful," "smart" and "wonderful children." Ms. Hammat was aware that the children had moved frequently, and she was also aware that Ms. Nelson was contemplating a move to New York. Although she testified that she would hate to see them leave the school, she had not noticed, nor did she anticipate, that the moves had, or would have, any detrimental effect on the children.
The record also contains the testimony of the oldest of the parties' children, Joshua, who was fourteen at the time of trial. He testified that his Dad (Mr. Land) "doesn't call a whole lot." When questioned by the court whether he was given *98 permission and freedom by his mother to call his father at any time, he responded, "a lot of times we (he and his siblings) don't want to call." Joshua testified that he loved his father and he knew his father loved him; however, he stated that he really wanted to live in New York with his mother because, "the whole style of living with my dad is different and it's very uncomfortable. He is really relaxed on his rules and he acts a lot differently than he used to and everything he taught me as I was growing up is a lot more relaxed."
Mr. Land denied that he did not call the children, maintaining that he called often and that Ms. Nelson was not giving the children the messages. He admitted that he moved several times after the separation, including a few times in California, and that during some of those moves, he was without telephone service. However, he maintained that he provided Ms. Nelson with numerous numbers and ways that he could be reached. Although Mr. Land complained that Ms. Nelson made his visitation with the children difficult, he was unable to provide the court with any specific instance, with the exception of the night before the trial, where he had attempted to visit the children and had been refused the opportunity to do so by Ms. Nelson. Mr. Land admitted there were several times when he had told the children he would try to come to Baton Rouge (i.e., to see a play one Memorial Day weekend, and for Christmas one year) and for various reasons, was unable to do so. Although Mr. Land testified regarding his opposition to the children moving to New York and his desire to have them live with him in California, notably absent from the record is any testimony from Mr. Land regarding his relationship with his children. Certainly, implicit in his testimony is a real love and concern for the well-being of his children and it is clear that he wants to remain involved in their lives as much as possible. The record contains the testimony of Camille Land, Mr. Land's current wife to whom he had been married for nine months at the time of the trial. She testified that he was the "most amazing father I have ever seen." She also testified she witnessed the difficulties between Mr. Land and Ms. Nelson in attempting to coordinate the children's schedules and visitations.
With regard to the children's relationships with other significant persons in their lives, the evidence revealed that Ms. Nelson frequently took the children to Michigan to spend time with their grandparents and extended family, including Mr. Land's extended family. The evidence revealed that Mr. Land was not in frequent contact with either his parents or his extended family, and that he did not go to Michigan any of the times that his children were there visiting their grandparents.

(2) The age, developmental stage, needs of the child, and the likely impact that relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
The ages of the children at the time of trial were fourteen, twelve, ten and eight. The oldest was just beginning high school and as observed by Ms. Nelson, they are just beginning a perpetual cycle wherein one of them will either be starting or finishing a particular school. As noted earlier, the children have been subjected to frequent and numerous moves which undeniably have prevented them from having a desired sense of stability. Thus, while another move is certain to uproot them again, emotionally and educationally, given the factual circumstances of this case, a relocation is inevitable. There is no solution which would prevent uprooting the children once again.

*99 (3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.

Whether the children live in New York with their mother, or in California with their father, they will inevitably be a considerable distance from the other parent. Although Mr. Land has already been exercising long distance visitation, he testified that the distance from California to New York, being much greater, would make visitation more difficult than it was from California to Baton Rouge. Both parents demonstrated a willingness to cooperate in the necessary visitation arrangements. We note that, while the distance from California to New York is great, the children have immediate family on both sides in Michigan, which is closer to New York than either Baton Rouge or California. Also, visitation arrangements could be made to coordinate visits in Michigan. The record further revealed that if relocated to New York, the children would also be closer to their step-grandparents, who live in New York as well as Camille Land's family, which lives in New Jersey.

(4) The child's preference, taking into consideration the age and maturity of the child.
As noted earlier, the oldest child, Joshua, testified, that he would strongly prefer to live in New York with his mother than in California with his father.

(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating parent.
Mr. Land asserts that Ms. Nelson has attempted to thwart his relationship with his children by refusing to return phone calls, relay messages, and making the coordination of times and schedules for visitation unduly difficult. However, our review of the record fails to support these allegations. Neither Mr. or Mrs. Land could provide the court with any specific instance, other then the night before the trial, where Mr. Land's attempts to see his children were refused or thwarted by Ms. Nelson. The record reveals that coordinating schedules and times is somewhat difficult and confusing; however, this is due to the fact that there are four children to coordinate. Because of their ages and activities in which they are involved, both educational and extracurricular, coordinating visitation will require the cooperation and understanding of both parents. The record reveals that both parents are able and willing to make the necessary sacrifices to ensure that the children enjoy a relationship with both parents.

(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
The record reveals that a relocation to New York will provide Mr. Nelson with more lucrative employment that will enable Ms. Nelson to stay home and tend to the children. Mr. Nelson's parents have also offered their help in building a new home and establishing a permanent domicile so that the children can enroll and remain in the same school system for the duration of their education. Because the move to Louisiana was intended to be temporary and because all of the plans with the ministry fell through, the Nelsons did not establish any solid friendships in or ties to Louisiana. In fact, one of the stated reasons for the relocation was to move *100 back closer to family and friends. As stated earlier, with the Nelson family residing in New York and the other extended family living in Michigan, the relocation to New York would certainly accomplish the goal of bringing the children closer to friends and family.

(7) The reasons of each parent for seeking or opposing the relocation.
The reasons for the relocation are detailed in the discussion on good faith. Mr. Land testified that his primary reasons for opposing the relocation were the instability created in the children's lives from such frequent moves, and the fact that they would be again uprooted from a place where they have developed relationships with people as well as schools and teachers. He also stated that the move to New York would place the children even farther away from him in California making travel a little more difficult and less cost effective.

(8) Any other factor affecting the best interest of the child.
There is no factor not already discussed affecting the best interests of the children. Our review of the foregoing factors and evidence leads us to the conclusion that clearly it is in the best interests of the children to allow them to relocate to New York with their mother. All four children have lived with their mother all of their lives, and exclusively with her since the parties' separation in 1997. The evidence established that the children have a good, caring and nurturing relationship with their mother, as well as with their extended families, due largely to Ms. Nelson's efforts in keeping them in contact with their relatives. The move is being made in good faith and it will almost certainly benefit the whole family financially and provide them an opportunity to regain some stability in their lives. With the exception of their father, with whom they already have a long-distance relationship, the move will bring the children closer to their entire family. And although the distance may be a bit greater from California to New York, than to Baton Rouge, the children will still enjoy the same opportunities for visitation and maintaining a long distance relationship with their father with which they are already accustomed. In sum, consideration of all of the statutory factors weighs in favor of allowing the requested relocation.
Accordingly, the judgment denying the relocation and transferring the domiciliary custody of the children to Mr. Land in California is hereby reversed and the request for relocation is granted. Costs of this appeal are assessed to Mr. Land.
REVERSED AND RENDERED; REMANDED FOR FURTHER PROCEEDINGS CONSISTENT HEREWITH.