**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CU 0196

R.S.

VERSUS

H.F.

Consolidated with

2021 CU 0197

H.B.

VERSUS

R.S.

Judgment Rendered: __JUL 2 2 2021__

\* \* \* \* \* \* \*

APPEALED FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA
DOCKET NUMBER 2019-14306 c/w 2019-14360, DIVISION "K"

HONORABLE MARY C. DEVEREUX, JUDGE

\* \* \* \* \* \* \*

Mark J. Mansfield                    Attorneys for Plaintiff/Appellant
Amy C. Cowley                        R.S.
Covington, Louisiana


Angela Cox Williams                  Attorneys for Defendant/Appellee
Jesmin Basanti Finley                H.F.
Slidell, Louisiana

BEFORE:  McDONALD, HOLDRIDGE, and PENZATO, JJ.

**McDONALD, J.**

In this child custody case, the trial court granted the mother's request to relocate with the child to Sour Lake, Texas. The father appealed that judgment. After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

The parents in this case, R.S. (the father) and H.F. (the mother), were in a romantic relationship from 2005 to 2008 but did not marry.[1] They had one child together, T.B.S., born on January 31, 2007. R.S. and H.F. broke up when T.B.S. was around one and-a-half years old. H.F. later married C.B., who worked as a rigger. H.F. and C.B. had two daughters together, age three and seven at the time of trial. The parties amicably co-parented for twelve years without a custody judgment. The parties were unable to agree upon child support, which was then established by a nonsupport order. At the time of trial, R.S. paid $755.00 monthly child support. T.B.S. lived with H.F. all year, R.S. had visitation three weekends a month, and the parties rotated holidays.

H.F. took T.B.S. to his doctor and dental appointments and was a room mother and a volunteer at his school. H.F. was the primary parent regarding T.B.S.'s education, and she attended all of his parent/teacher conferences and open houses. H.F. and C.B. invited R.S. to events at their home, including events for T.B.S. and his half siblings. R.S. worked long hours as a field service technician, traveled for work, and was unable to commit to seeing T.B.S. during the week for the first ten years of T.B.S.'s life. Two years prior to trial, R.S. started his own business to have more control over his schedule and more time available to see T.B.S. During the ten years prior to trial, R.S. had spent around 98 days a year with T.B.S.

---

[1] The initials of the child and the parents are used to protect the identity of the minor child. See Uniform Rules-Courts of Appeal, Rules 5-1 and 5-2.

On August 19, 2019, R.S. filed a "VERIFIED MOTION FOR PATERNITY, IN THE ALTERNATIVE, DNA TESTS TO PROVE PATERNITY, CUSTODY AND FOR INJUNCTIVE RELIEF TO PREVENT UNLAWFUL RELOCATION OF MINOR CHILD OUT OF STATE" in suit number 2019-14306. R.S. maintained that he formally acknowledged T.B.S at the hospital when he was born and that he was listed on T.B.S.'s birth certificate. He requested a DNA test if H.F. refused to acknowledge his paternity. R.S. maintained that H.F. intended to relocate to Sour Lake, Texas, with T.B.S. due to C.B.'s job there. R.S. opposed the relocation of T.B.S. to Sour Lake, Texas, and sought joint custody with himself as the domiciliary parent.

On August 21, 2019, H.F. sent R.S. a letter notifying him that she proposed to relocate with T.B.S. to Sour Lake, Texas, around May 23, 2020, after the 2019-2020 school year ended. Also on August 21, 2019, H.F. filed a petition to establish custody in a second suit, 2019-14360. She asked that R.S. be declared the father of T.B.S., that the parties be given joint custody, and that she be designated the domiciliary parent.

On September 11, 2019, in the first suit, H.F. filed a motion for permission to relocate with T.B.S. to Sour Lake, Texas, due to C.B.'s employment there. The parties filed a joint motion to consolidate the suits, and on September 19, 2019, they were consolidated into 2019-14306.

Prior to trial, on November 7, 2019, the parties stipulated that R.S. was the legal and biological father of T.B.S., and they agreed to joint custody with H.F. as the domiciliary parent. The parties did not agree to a visitation schedule, but did agree to share holidays according to a schedule. The hearing officer recommended that R.S. continue to have visitation with T.B.S. three out of four weekends a month during the school year, with a rotating 7/7 day schedule in the summer. The

3

trial court ordered that this temporary order remain in place until the trial. The trial was conducted June 15 and 16 and July 23, 2020.[2]

At the start of the trial T.B.S. testified at a **Watermeier**[3] hearing, and afterward the parties advised the trial court that although R.S. had technically filed his opposition before H.F. sought judicial permission to relocate, H.F. had the burden of proof and would proceed first if acceptable to the trial court. The trial court agreed. The parties also stipulated that H.F. would be moving to Texas regardless of the trial court's decision, and they stipulated to a proposed custody schedule without knowing which party would have domiciliary custody.

At the close of trial, the trial court rendered judgment in favor of H.F., finding the proposed relocation was made in good faith by H.F. and was in T.B.S.'s best interest, and granting H.F.'s request to relocate with T.B.S. to Sour Lake, Texas. The trial court noted that T.B.S. wanted to relocate with his mother and that H.F. had always been the domiciliary parent. The trial court used the visitation schedule stipulated to by the parties for the non-domiciliary parent. The schedule provided for R.S. to have more time with T.B.S., at approximately 120 days a year. The judgment was signed on August 5, 2020.[4] R.S. appealed the judgment.

On appeal, R.S. makes the following assignments of error:

1. It was legal error for the [trial court] to ignore the enumerated, relocation factors of La. R.S. 9:355.14 and instead [apply] La. C.C. art. 134 factors to determine whether to grant [the] relocation [request].

---

[2] The trial was delayed due to Covid-19.

[3] See **Watermeier v. Watermeier**, 462 So.2d 1272 (La. App. 5th Cir.), writ denied, 464 So.2d 301 (La. 1985). A **Watermeier** hearing is a hearing in chambers, outside the presence of the parents, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody. **In re D.C.M.**, 2013-0085 (La. App. 1 Cir. 6/11/13), 170 So.3d 165, 168, n.9, writ denied, 2013-1669 (La. 7/17/13), 118 So.3d 1102.

[4] After H.F. filed a motion to clarify and/or modify the judgment, the parties entered into a stipulated judgment agreeing upon: details of exchanging T.B.S.; that T.B.S. would not travel on Christmas Day; providing additional visitation with T.B.S. if either party were in the same state as T.B.S. during the summer or a holiday that T.B.S. was with the other parent; and limitations on introducing prospective new partners to T.B.S. or having a prospective new partner sleep over when T.B.S. was present.

2. The [trial court] erred in relying on the testimony of [T.B.S.] to determine his "stability and the extent of attachment to his mother" where [T.B.S.] did not offer any testimony regarding such matters.

3. The [trial court] erred in considering whether the appellee would move without [T.B.S.] if the relocation was denied, in violation of La. R.S. 9:355.14(B).

4. It was error for the [trial court] to shift the burden to the opponent to oppose the relocation whereby the judge acknowledged and accepted that the move out of state would occur regardless of the [trial court's] decision regarding relocation.

5. It was legal error for the [trial court] to grant relocation whereby the proponent did not meet the high burden of proof [necessary] to show the relocation was in [T.B.S.'s] best interest.

## ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, R.S. maintains that the trial court ignored the relocation factors provided in La. R.S. 9:355.14, and instead applied La. C.C. art. 134[5] factors to determine whether to grant the relocation request.

---

[5] Louisiana Civil Code article 134 provides:

> A. Except as provided in Paragraph B of this Article, the court shall consider all relevant factors in determining the best interest of the child, including:
> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
> (2) The love, affection, and other emotional ties between each party and the child.
> (3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
> (4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
> (5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
> (6) The permanence, as a family unit, of the existing or proposed custodial home or homes.
> (7) The moral fitness of each party, insofar as it affects the welfare of the child.
> (8) The history of substance abuse, violence, or criminal activity of any party.
> (9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.
> (10) The home, school, and community history of the child.
> (11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
> (12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.
> (13) The distance between the respective residences of the parties.
> (14) The responsibility for the care and rearing of the child previously exercised by each party.

5

The trial court is not required to expressly analyze each factor in its oral or written reasons for judgment in a relocation case. **Gathen v. Gathen**, 2010-2312 (La. 5/10/11), 66 So.3d 1, 12. Consequently, we find the trial court's failure to expressly analyze each factor does not constitute an error of law that would allow *de novo* review. The appropriate standard of review is that the trial court's relocation determination is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion. **Gathen**, 66 So.3d at 12-13.

Louisiana Revised Statutes 9:355.14 provides:

A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:

(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

B. In cases involving a history of committing family violence, as defined in [La.] R.S. 9:362, or domestic abuse, as defined in [La.] R.S. 46:2132, including sexual abuse, as defined in [La.] R.S. 14:403, whether or not a party has sought relief under any applicable law, the court shall determine an award of custody or visitation in accordance with [La.] R.S. 9:341 and 364. The court may only find a history of committing family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.

6

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

B. The court may not consider whether the person seeking relocation of the child may relocate without the child if relocation is denied or whether the person opposing relocation may also relocate if relocation is allowed.

Factor one is the nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life. The trial court noted that H.F. was without question the primary parent to T.B.S., as R.S. frequently traveled, and that H.F. acted as the parent who was present every day for T.B.S. The trial court stated that R.S. had no other children, but H.F. had two children with C.B., and that T.B.S. was very attached to his two younger half-siblings. The trial court noted that R.S. had been in relationships with seven different women in the past ten years, other than his current relationship. The trial court observed that these women all had children of their own; that the women and their children came into T.B.S.'s life and T.B.S. got attached to them; and then the women and their children abruptly left. The trial court noted that a number of these women had problems, but that R.S. did not look into them and their court

7

records before bringing them into his home. The trial court found R.S.'s numerous romantic relationships were irresponsible and extremely detrimental to T.B.S.

Factor two addresses the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development. The trial court noted that T.B.S. was thirteen, and that if he stayed with R.S., he would have to change schools, necessitating developing new friendships, just like moving with H.F. would necessitate. The trial court found that T.B.S.'s true stability and true parental attachment was with H.F.

Factor three is the feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties. The trial court found that there was an hour-and-a-half flight between Houston and New Orleans the parties could utilize that would be less time-consuming than driving. The trial court also stated that the parties could drive and meet in the middle to exchange T.B.S. H.F. testified that she preferred driving and that she could meet R.S. halfway to exchange T.B.S. R.S. testified that he would be willing to drive halfway to exchange T.B.S.

Factor four addresses the child's views about the proposed relocation, taking into consideration the age and maturity of the child. The trial court noted that T.B.S. testified that he wanted to move with H.F. The trial court also stated that T.B.S. was thirteen years old, and was a lovely, delightful child, indicating that the trial court found T.B.S. to be mature.

Factor five addresses whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party. The trial court found that the parties had worked together in an exemplary manner for the benefit of

8

T.B.S. However, the trial court also noted that more than just choosing to litigate the relocation issue, R.S. had chosen to "disrupt the whole parenting relationship." The trial court expressed its wish that R.S. "unmake" that choice, and go back to the "extremely cooperative parenting" with H.F. that had taken place before H.F. expressed her wish to relocate with T.B.S.

Factor six addresses how the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity. The trial court noted that H.F. would be able to be a stay-at-home mother with the move, and that the move would provide financial and family stability for T.B.S. with H.F. H.F. testified that the school T.B.S. would attend in Sour Lake, Texas, was rated higher than the school he would attend if he stayed in Slidell, Louisiana.

Factor seven addresses the reasons of each person for seeking or opposing the relocation. The trial court found that the relocation offered the opportunity for T.B.S. to be with his immediate family, where he could come home every night to be with his mother and two younger half-siblings. It also offered financial stability. H.F. testified that C.B. had a long-term well-paying job in Sour Lake, Texas, with good benefits that would enable her to be a stay-at-home mother. R.S. testified that the relocation would mean he would see his son less often and he would not be able to attend T.B.S.'s school events. However, it was established at trial that R.S. would have more visitation days with T.B.S. under the new visitation schedule.

Factor eight addresses the current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child. The trial court noted that the move would provide financial stability for H.F., who could be a stay-at-home mother, and that T.B.S. would come home to

his mother and two half-siblings. R.S. testified that he had started his own company two years before trial to have control over his work schedule and have more time with T.B.S. H.F. testified that she had agreed to reduce R.S.'s monthly child support payment by $155.00 per month and pay for T.B.S.'s health insurance through C.B.'s health insurance plan to save R.S. money, and thus, help defray R.S.'s travel costs for exchanging T.B.S. after the relocation.

Factor nine addresses the extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, community property, and alimentary obligations. While the trial court did not mention this factor in its reasons, the parties were never married, thus spousal support, community property, and alimentary obligations were not relevant. R.S. testified that he always paid his child support, but that sometimes he was late making payments. H.F. testified likewise.

Factor ten addresses the feasibility of a relocation by the objecting person. The trial court did not address this factor. However, R.S. testified that he could not relocate to Texas near T.B.S. as he owned his business and could not leave his customer base. He also testified that he did not want to move away from his family.

Factor eleven addresses any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation. The trial court did not address this factor as it did not appear to be an issue in this case.

Factor twelve addresses any other factors affecting the best interest of the child. This catch-all provision basically supports the "best interest of the child" focus in relocation cases and allows the trial court to consider any other factor that

10

affects the best interest of the child, even if not listed. The trial court noted that H.F. and C.B. had gone out of their way to be extremely careful not to supplant R.S.'s relationship with T.B.S. with a relationship with C.B. The trial court found that H.F. and C.B. encouraged T.B.S.'s relationship with R.S. The trial court stated that R.S. and H.F. had enjoyed an excellent co-parenting relationship until H.F. wanted to relocate. R.S. testified that if the trial court allowed H.F. to relocate with T.B.S., he would be able to re-establish a good co-parenting relationship with H.F.

Based on a review of the record, we find that the trial court more than adequately addressed the factors listed in La. R.S. 9:355.14 and did not apply La. C.C. art. 134 rather than La. R.S. 9:355.14. This assignment of error has no merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, R.S. maintains that the trial court erred in relying on the testimony of T.B.S. to determine his stability and the extent of attachment to his mother where T.B.S. did not offer any testimony regarding such matters. As stated earlier, H.F. acted as T.B.S.'s primary parent. H.F. testified that T.B.S. had never been away from her for more than a week. T.B.S. testified that he wished to relocate with H.F. T.B.S. testified that he had always mainly lived with H.F. Further, T.B.S. testified that over the years R.S. would have a girlfriend, then they would break up and he would find another one. He testified that "recently[,] it's been more stable for about a year, I think."

We find no error or abuse of discretion by the trial court in allowing the testimony of T.B.S., a thirteen-year-old, to testify concerning his stability and the extent of his attachment to H.F. Further, there is ample evidence in the record showing the stability of T.B.S.'s relationship with H.F. and his attachment to H.F. as his primary parent outside of T.B.S.'s testimony. This assignment of error has

no merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In this assignment of error, R.S. maintains that the trial court erred in considering whether H.F. would move without T.B.S. if the relocation were denied, in violation of La. R.S. 9:355.14(B).

The parties stipulated that H.F. would move to Sour Lake, Texas, regardless of whether the trial court granted her motion to relocate with T.B.S. This stipulation was read by the parties into the record at the start of the trial. Further, the parties stipulated that T.B.S. would live with one parent during the school year and spend the majority of the summer and holidays with the other parent. Thus, the trial court only had to decide which parent T.B.S. would live with during the school year and the travel logistics. We do not find that the trial court impermissibly considered whether H.F. would relocate without T.B.S. if the motion for relocation was denied. This assignment of error has no merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

In this assignment of error, R.S. maintains that the trial court erred in shifting the burden to him to oppose the relocation, whereby the trial court acknowledged and accepted that the move out of state would occur regardless of the trial court's decision regarding relocation.

Our review of the record shows that the trial court did not shift the burden to R.S. to oppose the relocation. As stated earlier, the parties stipulated that H.F. would be relocating regardless of the trial court's decision. We find that the record, including the factors outlined above pursuant to La. R.S. 9:355.10, supports the trial court's decision to grant H.F.'s relocation request and that there was no shifting of the burden of proof by the trial court. This assignment of error has no merit.

## ASSIGNMENT OF ERROR NUMBER FIVE

In this assignment of error, R.S. maintains that the trial court erred in granting the relocation because H.F. did not meet the high burden of proof that was required to show that the relocation was in T.B.S.'s best interest. The person proposing relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. La. R.S. 9:355.10. Our jurisprudence has established that improved job prospects of the relocating parent or of that parent's new spouse is sufficient to establish good faith. **Nelson v. Land**, 2001-1073 (La. App. 1 Cir. 11/9/01), 818 So.2d 91, 94.

H.F. proposed moving to Sour Lake, Texas, after C.B. secured employment there on an extended contract with good wages and benefits. The trial court found that H.F. was in good faith, noting that unlike some jobs in the Slidell area, C.B. had a job in Sour Lake, Texas. that promised stability for a number of years where he could come home to his family every night. The trial court found that the move would result in financial and family stability for H.F., who had two younger children. The trial court then noted R.S.'s history of revolving relationships with women who came into T.B.S.'s life with children of their own, and then left abruptly after T.B.S. got attached, especially to the children. The trial court noted that T.B.S. wanted to move with H.F., and that H.F. and C.B. had been extremely careful in preserving R.S.'s relationship with T.B.S. The trial court carefully considered all of the facts before determining that relocation was in T.B.S.'s best interest. We find no abuse of discretion in the trial court's determination, after review of all of these facts, that H.F. was in good faith and that H.F. met the burden of proving that relocation was in T.B.S.'s best interest. See **Gathen**, 66 So.3d at 13. This assignment of error has no merit.

13

**CONCLUSION**

After a thorough review of the record, we find no abuse of discretion in the trial court's determination that relocation was in T.B.S.'s best interest. Thus, the trial court's judgment granting H.F.'s motion to relocate with T.B.S. is affirmed. Costs of this appeal are assessed against R.S.

**AFFIRMED.**